COMMONWEALTH vs. GEORGE W. PERRY.

Suffolk.    May 10, 1978. — August 2, 1978.

Present: HALE, C.J., GRANT, & BROWN, JJ.

Assault with Dangerous Weapon. Practice, Criminal, Instructions to
    jury, Continuance, Assistance of counsel. Constitutional Law,
    Waiver of constitutional rights. Waiver. Evidence, Cumulative,
    Redirect examination, Prior conviction.

At the trial of a defendant charged with armed assault in a dwelling
    with intent to commit a felony, evidence that the defendant wielded
    a toy gun which appeared capable of causing harm and that the gun
    so frightened the victim that she yielded to his directions and suf-
    fered chest pains was sufficient to warrant a finding that the toy
    gun was a "dangerous weapon" within the meaning of G. L. c. 265,
    § 18A. [533–536]
At the trial of indictments under G. L. c. 265, §§ 17 and 18A, there was
    no error in the judge's instructions with respect to the meaning of
    "dangerous weapon" as used in those sections. [536–537]
There was no merit to a criminal defendant's contention that he was
    denied his constitutional right to effective assistance of counsel by
    the judge's denial of his motions for appointment of new counsel
    and for a continuance. [537–541]
Evidence at a hearing on a defendant's motion to suppress statements
    he had made to police officers warranted a finding that the defend-
    ant had made a knowing, intelligent, and voluntary waiver of his
    rights. [541]
At a criminal trial, the judge did not err in excluding proffered tes-
    timony which was merely cumulative. [541–542]
At a criminal trial, the judge did not err in permitting a witness whom
    the defendant had attempted to impeach by a prior inconsistent
    statement to explain the statement on redirect examination. [542]
At a criminal trial, the judge did not abuse his discretion in continuing
    the case at 3:00 P.M. on the penultimate day of the trial until the
    following morning to afford counsel the opportunity to review the
    records of the defendant's prior convictions, even though the con-
    tinuance resulted in the introduction of those records as the final
    evidence in the case immediately prior to arguments and charge.
    [542]

At a criminal trial, the judge did not err in permitting the prosecutor
    to impeach the defendant as a witness by reading the records of his
    convictions without introducing in evidence the records them-
    selves. [542]

INDICTMENTS found and returned in the Superior Court
on February 22, 1977.

The cases were tried before *Garrity*, J.

*Barry P. Wilson* (*Cathy J. Gross* with him) for the de-
fendant.

*John A. Kiernan*, Assistant District Attorney (*Dennis
J. Curran*, Assistant District Attorney, with him) for the
Commonwealth.

HALE, C.J. In this trial conducted pursuant to G. L.
c. 278, §§ 33A–33G, the jury could have found that on the
morning of February 14, 1977, the victim, a sixty-six year
old woman, was returning home after a short walk to the
grocery store. As she was unlocking the door to her apart-
ment building, the defendant, posing as a heating man,
demanded entrance to her apartment. He followed her up
the stairs and entered the apartment with her despite her
protests that there was nothing wrong with the heating
system. After he came into the apartment he closed the
outside door, which locked automatically. He pretended
to check the heating system and then pulled a "gun"
(which was later discovered to be a black plastic toy pis-
tol), putting it over the head of the victim with one hand
and throwing her down to the floor with his other hand.
The victim was "petrified." She asked the defendant not
to kill her and said she would give him whatver he want-
ed. She obtained money from various places in her apart-
ment and gave it to the defendant. He continued to
threaten her and search her apartment for more money.
The victim remained in her bedroom as ordered by the
defendant. After fifteen or twenty minutes, four police-
men, who had been summoned by a neighbor who had
heard the victim's cries, knocked at the door, and, receiv-
ing no response, broke down the door and arrested the
defendant. The police read him the Miranda rights, to

which he responsed, "I know my rights; I've been through this before." In response to brief questioning the defendant made certain admissions. Further facts will be related as necessary to our discussion of those assignments which the defendant has argued.

The defendant was indicted on charges of armed robbery (G. L. c. 265, § 17) and armed assault in a dwelling with intent to commit a felony (G. L. c. 265, § 18A, as appearing in St. 1969, c. 473). He was found guilty and sentenced to ten to fifteen years on each indictment, the sentences to run concurrently. He has brought nineteen assignments of error before this court but has expressly waived five of them.

The defendant's arguments fall into five categories: (1) claimed error in the denial of his motion for a directed verdict of not guilty on the charge of armed assault in a dwelling, (2) claimed errors in the judge's instructions to the jury regarding the meaning of "dangerous weapon" as used in G. L. c. 265, §§ 17 and 18A, (3) the denial of the defendant's motion to suppress statements made to the police, (4) an allegation that he was denied the effective assistance of counsel, and (5) several alleged errors in rulings made during the course of trial. We shall discuss them separately.

1. At the conclusion of the Commonwealth's case the defendant moved for a directed verdict on the armed assault charge.[1] The motion was denied, He argues that to convict under G. L. c. 265, § 18A, requires that the defendant be shown to have been armed with a weapon which is in fact dangerous.

At the outset it should be pointed out that the meaning of "dangerous weapon" as the term is used in § 18A has

---

[1] General Laws c. 265, § 18A, provides: "Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years. No person imprisoned under this section shall be eligible for parole in less than five years."

received no judicial attention by either this court or the Supreme Judicial Court. We shall therefore be guided in part by the rules of statutory construction. One such rule is that "if reasonably practicable, words used in one place in a statute with a plain meaning are given the same meaning when found in other parts of the same statute to the end that there may be a harmonious and consistent body of law." *Randall's Case*, 331 Mass. 383, 386 (1954). General Laws c. 265 defines various crimes against persons and metes out differing penalties therefor. Among the crimes described in that chapter, some are obviously more serious than others. Several factors serve to aggravate the crimes of assault, assault and battery, and robbery from the person. Among the aggravating factors are the age of the victim (e.g., §§ 13B, 24B), the place of the assault (18A), whether the assault occurs as part of an attempt to commit another crime (e.g., §§ 15, 18, 20, 24, 24B, 29), and whether the perpetrator is armed (e.g., §§ 15A, 15B, 17, 18, 18A). The statutes consistently provide that crimes committed either by means of a dangerous weapon (§§ 15A and 15B) or while the perpetrator is armed with a dangerous weapon (§§ 17, 18 and 18A) carry more severe penalties than crimes committed without the use of a weapon or in other aggravating circumstances.

The Supreme Judicial Court has held with regard to G. L. c. 265, § 17, that whether an instrument is a dangerous weapon depends upon whether it "has the apparent ability to inflict harm, whether the victim reasonably so perceived it, and whether the perpetrator by use of the instrumentality intended to elicit fear in order to further the robbery." *Commonwealth* v. *Tarrant*, 367 Mass. 411, 417 (1975). See also *Commonwealth* v. *Delgado*, 367 Mass. 432, 435–437 (1975). The defendant argues that this "reasonable apprehension standard" should not be applied to § 18A and that a conviction under § 18A requires proof that the defendant was armed with a weapon which was in fact dangerous. In support of that argument the de-

fendant offers the supposed intention of the Legislature as gleaned from his reading of the statutory history. The similarities between §§ 17 and 18A are more revealing as to what acts the Legislature intended to punish. While under § 17 a crime may take place anywhere and the victim may part with property because of fear, under § 18A the crime must take place in a dwelling and the inducement of fear need only be accompanied by an intent to commit a felony, which need not occur. Each section, however, has a central requirement that the victim be put in fear, as well as a requirement that the perpetrator be armed with a dangerous weapon. We are not persuaded that the Legislature intended the words in § 18A "armed with a dangerous weapon" to have a meaning different from the very same words used in § 17 and which the Supreme Judicial Court interpreted in the *Tarrant* case.[2]

The public policy of deterrence of injury and violence which underlies § 18A also dictates this interpretation of the meaning of "dangerous weapon" in the section. See *Commonwealth* v. *Tarrant*, 367 Mass. at 415. In this case the defendant's possession of an instrumentality with the apparent capability of causing harm[3] so frightened the victim that she yielded to his directions. She also suffered "a tightening in [her] chest" and was taken to a doctor

---

[2] Where the Legislature has intended different meanings within c. 265, it has used different words. We have recently held that § 15A of c. 265, setting out the crime of assault and battery "by means of a dangerous weapon," requires proof that the battery actually was committed through the use of the dangerous instrumentality. *Commonwealth* v. *Manning, ante* 430, 436-438 (1978). In that case it was suggested that under § 15A as well as under § 17, the gist of the offense was the perpetrators' possession of the weapon. *Id.* at 437-438, and cases cited. We noted, however, that § 15A uses the words "*by means of* a dangerous weapon" and contrasted the language of § 17 "*being armed with* a dangerous weapon" (emphasis supplied), the latter requiring merely that the perpetrator have the weapon under his control; the former, by its plain language, requiring that the weapon be used to commit the battery.

[3] The toy gun is an exhibit in the record before us.

because of a pre-existing heart condition. As the Supreme Judicial Court noted in *Tarrant,* at 415: "[I]t is . . . the potential for injury, and the tendency toward resistance, conflict, and violence in result which exists where robbery is perpetrated with the use of a dangerous weapon" which makes the crime of armed robbery aggravated. The policies that support the *Tarrant* definition as applied to § 17 are equally applicable to acts committed in violation of § 18A. The evidence was sufficient to warrant a finding that the toy gun was a "dangerous weapon" within the meaning of § 18A.

2. There is no merit to the defendant's complaint concerning the judge's instructions to the jury on the meaning of the words "dangerous weapon" as used in G. L. c. 265, §§ 17 & 18A. As we noted earlier, the defendant entered the victim's apartment armed with a black plastic toy revolver. The defense and the Commonwealth are in agreement that the toy revolver, not intrinsically a dangerous weapon, could be found to be a dangerous weapon by the jury under proper instructions from the judge. The judge properly instructed the jury on the meaning of the term "dangerous weapon" as defined by the Supreme Judicial Court in *Commonwealth* v. *Tarrant, supra* at 417. In fact, he read to the jury from *Tarrant,* explaining by hypotheticals how the case applied to the evidence before them. He then repeated the definition and instructed them that "you could find that plastic gun to be a dangerous weapon, or you could find it was not a dangerous weapon, depending on how you apply the facts to the standard I just gave you."

The defendant also contends that the judge's further instructions to the jury in response to a question from them were erroneous. The jury asked, "Explain 'to wit, a handgun,' Do we understand the weapon to be a handgun or used as a handgun." At a lobby conference at which both the defendant's counsel and the prosecutor were present, the judge said that he understood the question to refer to the wording of so much of the indictments as

charged the defendant with "being armed with a danger-ous weapon, to wit: a handgun." He said he thought that the jury were asking whether, if they should find the plastic gun to be a dangerous weapon, such a finding would comport with the meaning of the word "handgun" which was used in the indictments. He indicated that his answer would be "yes." There was no objection from de-fense counsel to that reading of the question. When the jury were brought back in, the judge instructed them in answer to their question that they could read "handgun" to mean the same thing as a "dangerous weapon." He then reread the *Tarrant* definition of a dangerous weap-on. The jury indicated that they understood what the judge was saying and that he had answered their ques-tion. The defendant objected to the instruction, urging that the proper instruction would be that "it's the appear-ance of being a handgun that controls." The judge in reading from *Tarrant* had charged that the instrument must have the "apparent ability to inflict harm." As the question was framed in the words of the indictments, it could only have meant what the judge took it to mean. It is not necessary for a judge to charge in the exact words requested by the defendant. He instructed the jury accu-rately and adequately on the meaning of the term "dan-gerous weapon." *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 539 (1971).

3. The defendant's contention that he was denied the effective assistance of counsel is based upon events occur-ring prior to trial. The incident from which the instant charges stem took place on February 14, 1977. The Mas-sachusetts Defenders Committee was appointed to repre-sent the defendant on February 24, 1977. On April 7 the case was on the trial list, and the defendant was brought into court. At that time he filed a "Motion for Reappoint-ment of Counsel for Defendant." A hearing was held on that motion, during which the defendant informed the judge that his counsel had been to see him only twice and that he no longer had any trust in him. Trial counsel

responded that he had discussed the facts of the case with the defendant and that he was ready to go forward. The defendant said there were certain witnesses to be called, but trial counsel explained that testimony of those witnesses would be relevant only to disposition, as they had no knowledge or factual information concerning the case in chief. The judge (motion judge) denied the defendant's motion but delayed the case "a few days, if not a little longer, to give you all the time you need to talk to [counsel]." He then ordered counsel to see the defendant as soon as he could and as often as necessary to prepare the defense.

On May 2, 1977, the defendant was again brought into court, and the case was called before a different judge for trial. At the outset trial counsel, in a lobby conference, requested a continuance. He told the judge that he did not feel that he had had enough notice that the case was going to be heard that day, that he had just completed two back-to-back trials of major crimes, and that he needed a few days to prepare a legal memorandum on the meaning of the term "dangerous weapon" as used in G. L. c. 265, § 18A. See *supra* at 536-537. The prosecutor objected to the continuance, stating that a continuance had been granted on April 7, at which time trial counsel had said that he was ready to go forward. The judge denied the motion and assured trial counsel that in the event the defendant should be convicted, disposition could be delayed at least a week in order to enable him to have time to call the disposition witnesses. At this point in the discussion a court officer informed the judge that the defendant wished to be present. The conference was thereupon adjourned to the courtroom. There the defendant again requested new counsel, advising the court that he would pay for private counsel. The judge denied the motion, stating that the decision of that question had already been made by the motion judge.

The defendant now argues that the denial of his motions for a continuance and to appoint new counsel vio-

lated his constitutional rights to the effective assistance of counsel and to a fair trial. The Commonwealth argues that the judge's refusal to grant the motions was a proper exercise of discretion.

We agree with the Commonwealth and hold that the judge did not abuse his discretion in denying either motion. "Whether a motion for continuance should be granted lies within the sound discretion of the judge whose action will not be disturbed unless there is a patent abuse of that discretion." *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517–518, 519–520. *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276 (1973). *Commonwealth* v. *LaFleur*, 1 Mass. App. Ct. 327, 330 (1973). In the exercise of discretion the defendant's right to a reasonable opportunity to obtain counsel and to prepare his defense must be considered. *Lindsey* v. *Commonwealth*, 331 Mass. 1, 2 (1954). The assignment of a particular lawyer to represent a defendant is within the discretion of the court. *Lamoureux* v. *Commonwealth*, 353 Mass. 556, 560 (1968). *Commonwealth* v. *Scott*, 360 Mass. 695, 698–701 (1971). *Commonwealth* v. *Smith*, 1 Mass. App. Ct. 545, 548 (1973). The right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure. *United States* v. *Poulack*, 556 F.2d 83, 86 (1st Cir. 1977). The defendant's assertion that he was prejudiced by the judge's ruling is without support. The case itself was basically straightforward. The defendant was apprehended inside the victim's apartment with his pockets full of checks and money which he admitted belonged to her. The principal factual issue at trial was whether the defendant had displayed the gun to the victim. That issue depended on the credibility of the victim and of the defendant, who took the stand. There were no witnesses who could have testified further, and defense counsel vigorously cross-examined the victim as to whether she had actually seen the gun. The time which trial counsel and the defendant spent preparing the defense was ample under the circumstances. There

was no showing that an absence of pretrial preparation resulted in the forfeiture of a substantial defense. *Commonwealth* v. *Saferian,* 366 Mass. 89, 98 (1974). *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). On the other hand, the Commonwealth had brought in all its witnesses for the second time, and the defendant had been given an extra three and one half weeks from the time his counsel had announced his readiness to proceed.

The defendant argues that he did lose a substantial defense in that trial counsel had requested time within which to brief the question whether a toy gun constituted a dangerous weapon under G. L. c. 265, § 18A. We have already answered that question adversely to the defendant in part 1 of our opinion.

The defendant's "expressed dissatisfaction with his trial counsel did not obligate the court . . . to substitute new counsel . . . ." *Commonwealth* v. *Scott, supra* at 700, quoting from *United States* v. *White,* 429 F.2d 711, 712 (D.C. Cir. 1970). The defendant was not free at his option to demand a change of counsel. He has not raised any question about the experience, skill, or competence of trial counsel. Although he did express and seemed to feel a lack of communication between himself and his counsel, our review of the record shows that counsel presented a spirited defense. He filed and argued a motion to suppress statements by the defendant. He filed and argued a motion for a directed verdict on the armed assault in a dwelling charge. He preserved the defendant's rights on each issue relevant to this appeal. In all respects he ably and conscientiously presented the defendant's case to the jury.

The defendant also argues that he suffered prejudice in the failure of trial counsel to interview two potential witnesses who had been asked by the police to witness the reading of the Miranda warnings to the defendant. There was no assertion at trial that the defendant wished to interview those witnesses. Speculation concerning their possible testimony is unpersuasive, especially in light of

the defendant's admission at trial that he understood his rights. Furthermore, the motion for new counsel had first been made on April 7, and a continuance had been granted at that time. The motion was renewed on the day of trial, when for the second time the Commonwealth had assembled all its witnesses. There is nothing before us that indicates that the denial of the motion for new counsel abridged the fair trial rights of the defendant.

4. We turn now to a consideration of the judge's denial of the defendant's motion to suppress statements he had made to the arresting officers after he had been informed of his Miranda rights.[4] The defendant claims that he was undergoing withdrawal from heroin and that he therefore was incapable of making a knowing, intelligent, and voluntary waiver of his rights. The judge conducted a voir dire to determine the voluntariness of the statements. The law regarding waiver of Miranda rights has recently been reiterated by the Supreme Judicial Court in *Commonwealth* v. *Hooks*, 375 Mass. 284, 288-289 (1978), and nothing would be added to the jurisprudence of this Commonwealth by restating the claimed violation of those rights. It is sufficient to say that the findings of the judge were warranted on the evidence before him and that there was no error in his denial of the motion to suppress.

5. The defendant makes four arguments concerning rulings by the trial judge. (A) He claims first that the judge abused his discretion by not allowing him to introduce evidence that he was given a methadone treatment at the Charles Street Jail after his arraignment in the Municipal Court. He argues that the evidence was relevant and material to the question whether he had made a knowing and intelligent waiver of his Miranda rights, which was made a jury issue after the judge denied

---

[4] After being informed of his rights and in response to brief questioning, the defendant said, "I stuck the gun in her face and told her I was going to kill her." He also admitted that the checks and money found in his pocket belonged to the victim. All these statements were the subject of the motion to suppress.

the motion to suppress. The defendant testified that he had begun a withdrawal from heroin on the morning of the alleged incident, that he had told the police he was sick, that he had been on and off drugs for the last thirteen years, that this time he had been addicted for some three to four months, and that he had had a $300 a day habit. By the defendant's own admission in his brief, the evidence of the methadone treatment would only have "further substantiated" the foregoing testimony. The jury had ample information regarding the defendant's addiction, and the proffered testimony was properly excluded as cumulative. (B) There was no error committed when a witness whom the defendant had attempted to impeach by showing a prior inconsistent statement was permitted to explain that statement on redirect examination. *Commonwealth* v. *Darden,* 5 Mass. App. Ct. 522, 527–528 (1977). (C) It was within the discretion of the judge, shortly after 3:00 P.M. on the penultimate day of trial, to continue the case until the following morning to afford counsel the opportunity to go over the records of the defendant's prior convictions, even though the continuance resulted in the introduction of those records as the final evidence in the case immediately prior to arguments and charge. See *Commonwealth* v. *Eppich,* 342 Mass. 487, 494 (1961). (D) The denial of the defendant's motion for a mistrial, made after the judge had charged the jury and grounded on the prosecutor's impeachment of the defendant as a witness by reading the record of convictions without introducing in evidence the records themselves, does not aid the defendant on appeal. There was no error in that commonly followed procedure (*Commonwealth* v. *Ferguson,* 365 Mass. 1, 11 n.8 [1974]), and no objection was made to that procedure at the time the records were read.

*Judgments affirmed.*