COMMONWEALTH vs. RONALD A. HOWARD.

Suffolk.   December 9, 1981. — June 25, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Robbery.*

At the trial of an indictment for robbery while "armed with a dangerous weapon," evidence that during the course of the crime the defendant had his right hand in his jacket and stated to the victim, "Walk straight, look down, and don't try anything foolish or I'll pull the trigger," implying that he had a gun, was insufficient to warrant a jury finding, on the basis of a reasonable inference and beyond a reasonable doubt, that the defendant had a gun, where no gun was seen or found and where the defendant had no opportunity or reason to dispose of a weapon, if he had one, before the police suddenly arrived and arrested him. [607-611] O'CONNOR, J., concurring; NOLAN, J., dissenting.

INDICTMENTS found and returned in the Superior Court on January 5, 1977.

The cases were tried before *Donahue*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Frank R. Herrmann* for the defendant.

*James M. Lynch*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant was convicted of robbery while "armed with a dangerous weapon." G. L. c. 265, § 17, as appearing in St. 1952, c. 406, § 1.   The evidence did not warrant a finding by the jury that the defendant in fact possessed any dangerous weapon.   The only evidence concerning a gun was that, when the defendant approached the victim on Commonwealth Avenue in Boston, in the early hours of November 20, 1976, he had his right hand in his jacket, and he said, "Walk straight, look down, and don't try anything foolish or I'll pull the trigger."

The defendant moved for a directed verdict on so much of the robbery indictment as charged robbery while armed with a dangerous weapon.[1] The judge denied the motion for a directed verdict. We granted the defendant's application for direct appellate review.

The judge charged the jury, over the defendant's objection, that the Commonwealth need not prove the existence of a weapon, but that, if the defendant uttered words and indicated by the position of his body and his arms that he had a gun, "the law will take him at his word that he did have a gun." In so charging the jury, the judge relied on language in *Commonwealth* v. *Delgado*, 367 Mass. 432, 437 (1975), which, standing alone, could fairly be understood as permitting a conviction for robbery with a dangerous weapon solely on the basis that the defendant robber had spoken words indicating that he had a gun, although no gun was ever seen or found. In the *Delgado* case, we did not endorse the concept that a jury must presume the existence of a gun from the robber's words: "Hold him or I'm going to shoot him." *Id.* at 436. Rather, we permitted the jury to infer the existence of a gun by saying: "[T]he jury could reasonably conclude that the defendant should be taken at his word." *Id.* at 437. As we point out later, the factual circumstances in the *Delgado* case were different from those in this case.

We conclude that where a robber had no instrumentality at all, although he said he had a gun, a conviction of armed robbery is not warranted. In short, the statute concerning armed robbery (G. L. c. 265, § 17) should not be read as including a robbery while *apparently* armed with a dangerous weapon when in fact the defendant was unarmed. In the case before us, the conviction of armed robbery must be reversed, and the case remanded for sentencing on the crime of unarmed robbery.[2]

---

[1] The motion should have been expressed in terms of a required finding of not guilty. Mass. R. Crim. P. 25, 378 Mass. 896 (1979).

[2] The issue that the defendant argues is largely academic. He was convicted of kidnapping but on appeal has argued no issue concerning that

As we have said, the victim was on Commonwealth Avenue when the defendant came up to her with his hand in his jacket and uttered the words quoted above. They walked down Commonwealth Avenue for a while, until the defendant told her to go up some stairs and into an apartment building. After they entered the first set of doors, the defendant demanded the victim's wallet, and she gave it to him. When an occupant of a first floor apartment opened her apartment door and saw the victim and the defendant, the defendant told the victim to leave the apartment building, and they did. They walked to the corner of Dartmouth Street and Commonwealth Avenue, turned right, and again right, into an alley. The defendant then demanded that the victim empty her pockets, and she gave him approximately $1.50 in change. At this point, a police cruiser arrived from one end of the alley, and a second cruiser arrived shortly thereafter from the other end of the alley. The defendant was arrested at the scene. No gun was found on the defendant or in the vicinity where he was arrested. The victim never saw a gun. The jury returned verdicts of guilty of kidnapping and armed robbery.

The evidence would not have warranted the jury in finding, on the basis of a reasonable inference and beyond a reasonable doubt (*Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 [1979]), that the defendant had a gun. No gun

___

conviction. He received a sentence of not more than seven nor less than five years to the Massachusetts Correctional Institution at Walpole on the kidnapping conviction. He received an identical sentence, to be served concurrently, on the armed robbery conviction. There is no question that the jury would have been warranted in finding the defendant guilty of unarmed robbery, and indeed the only relief the defendant seeks is that the armed robbery conviction be reversed and the case be remanded for sentencing on the lesser offense of unarmed robbery. The ranges of permissible sentences for armed robbery (G. L. c. 265, § 17) and unarmed robbery (G. L. c. 265, § 19), are identical: "[I]mprisonment in the state prison for life or for any term of years." It is probably true, however, that, in the event of any subsequent conviction of a crime, a probation record showing a prior conviction for armed robbery might prompt the sentencing judge to impose greater punishment than would a prior conviction of unarmed robbery.

was seen. No gun was found on the defendant or at the place where he was arrested. They could not reasonably infer that the defendant had a gun, but disposed of it before the police arrived. The defendant would have had no reason to dispose of a weapon, if he had had one, before the police suddenly arrived and arrested him.

It is the absence of any basis to infer that the defendant may have had a gun that distinguishes this case from *Commonwealth* v. *Delgado, supra.* As appears from the opinion of the Appeals Court in the *Delgado* case (2 Mass. App. Ct. 865, 866 [1974]), Delgado and three other men entered a grocery store. During the confrontation, the night manager of the grocery store was held at knife point. Delgado said, "Hold him or I'm going to shoot him." No gun was seen. After the money was taken, the four men ran out of the store. As we noted in our opinion, when the case was before us on further appellate review, no gun was found on Delgado or in the area where he was apprehended. *Commonwealth* v. *Delgado*, 367 Mass. at 436. In those circumstances, it was possible that Delgado had a gun and disposed of it. We concluded that "the jury could reasonably conclude that the defendant should be taken at his word." *Id.* at 437. In the *Delgado* case, the jury would have been warranted in finding beyond a reasonable doubt that Delgado had a gun.

We do not construe the *Delgado* case as eliminating the statutory requirement that a defendant have a dangerous weapon but only as holding that the jury were warranted in inferring beyond a reasonable doubt that, in the circumstances, Delgado had a gun. In the case before us, the defendant's statement alone, implying that he had a gun, where no gun was seen or found and he had no opportunity or reason to dispose of it, cannot be sufficient to warrant a conviction of robbery while "armed with a dangerous weapon."

If a robbery committed while *apparently* armed with a dangerous weapon is to be equated with armed robbery, the Legislature may make the appropriate statutory amend-

ment. We should not construe G. L. c. 265, § 17, a criminal statute, so loosely as to eliminate the requirement that there be some instrumentality which presents "an objective threat of danger to a person of reasonable and average sensibility." *Commonwealth* v. *Tarrant*, 367 Mass. 411, 416 (1975).[3] The crime of armed robbery, an aggravated form of robbery, is based in part on the potential for injury that arises from the possession of a dangerous weapon. When there is no such weapon, the potential is absent. The victim's apprehension is, of course, likely to be the same whether the defendant had a gun or only said he had a gun, but did not. The nature of any threats and a victim's apprehension may be relevant factors in sentencing a defendant on his conviction of unarmed robbery, but, in the absence of evidence warranting an inference beyond a reasonable doubt that a defendant, in fact, had some instrumentality in his possession, there can be no conviction of robbery while "armed with a dangerous weapon."

The judgment in the kidnapping case is affirmed. The robbery case is remanded to the Superior Court for the entry of a verdict of guilty of unarmed robbery and for the imposition of sentence for that offense.

*So ordered.*

O'CONNOR, J. (concurring). I agree that the evidence would not have warranted a finding by a jury that the defendant, in fact, possessed a dangerous weapon, and that a conviction of armed robbery was not warranted. I do not agree, however, that a defendant's statement, during a robbery, that he has a gun, together with evidence that he

---

[3] The *Tarrant* case involved a medium sized German shepherd dog that apparently responded to the robber's commands. *Id.* at 413. See *Commonwealth* v. *Henson*, 357 Mass. 686, 693 (1970) (conviction of assault by means of a dangerous weapon upheld where a revolver made for firing blanks showed "an apparent ability to accomplish the battery by means of the particular weapon used").

could have disposed of one, warrants a finding that he actually had a gun, nor do I agree that is the holding of *Commonwealth* v. *Delgado*, 367 Mass. 432 (1975). The holding in *Delgado* was not that the evidence warranted a finding that the defendant actually had a gun, but that the defendant's words, "Hold him or I'm going to shoot him," were the legal equivalent of possession, making the defendant guilty of armed robbery, regardless of whether he actually had a gun.

## I

The defendant's statement to the victim, "Walk straight, look down, and don't try anything foolish or I'll pull the trigger," and his gestures, were insufficient to satisfy a rational trier of fact beyond a reasonable doubt that he actually had a gun. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). As this court stated in *Latimore*, "[i]n reviewing the denial of motions for directed verdicts in criminal cases, we have frequently said that 'we must consider and determine whether the evidence, in its light most favorable to the Commonwealth . . . is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged.' *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975) . . . . Such statements are elliptical and they represent but one part of the required test of the sufficiency of the evidence to permit submission of a case to the jury. Additionally, the evidence and the inferences permitted to be drawn therefrom must be of 'sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt,' as required by *Commonwealth* v. *Cooper* [264 Mass. 368, 373 (1928)], and our other decisions which are in accord therewith." *Id.* at 676-677. We held that "the jury could reasonably infer in light of common experience that the defendant intentionally killed the victim after deliberate premeditation." *Id.* at 678. In light of common experience, a defendant's statement during a robbery that he has a gun, threatening as such a statement is, does not warrant an inference beyond a reasonable doubt that in fact he has one.

Common experience suggests that a robber who does not have a weapon may say he has one in order to facilitate the robbery. This is unlike a defendant's statement, after the crime has been completed, that at the time of the crime he had a weapon. See *Commonwealth* v. *Fiore*, 364 Mass. 819, 822 (1974); *Commonwealth* v. *Kimball*, 321 Mass. 290 (1947). Common experience tells us that ordinarily such an admission is not made unless it is true.

Even if the defendant has moved from the crime scene before being apprehended by the police, so that if he had a gun he could have disposed of it, a jury would not be warranted in finding that he had a gun. This is because evidence of such a circumstance is irrelevant; it lacks probative worth. "To have probative worth the evidence offered must tend to show, with a fair degree of probability, the fact for which it is offered as proof." P.J. Liacos, Massachusetts Evidence 408 (5th ed. 1981). A defendant's opportunity to dispose of a gun does not tend to show with any degree of probability that he had one, because it is as consistent with nonpossession as possession. This point becomes clearer when set in another context. If one is trying to prove that another had $1 million a year ago, it would not be relevant to prove that a person could spend this sum in one year. The opportunity to spend is as consistent with nonpossession as possession. Thus, if one is trying to prove that another had a gun at an earlier time, it is not relevant to prove that he could have disposed of it. On the other hand, evidence of a lack of opportunity would be relevant to proving nonpossession, because if no gun is found, such evidence does show with a fair degree of probability that no weapon was present.

The court distinguishes the present case from *Commonwealth* v. *Delgado*, 367 Mass. 432 (1975), on the ground that in *Delgado*, unlike the present case, there was evidence that the defendant moved from the scene of the crime before being apprehended. The court concludes that, on the basis of that additional evidence, we held in *Delgado* that the evidence warranted a finding by a jury that the

defendant actually had a gun. That is an improper construction of *Delgado*. Nowhere in the *Delgado* opinion did this court mention that the defendant had moved from the scene of the crime before being apprehended. The court now must refer to the opinion of the Appeals Court in *Delgado* to discover that Delgado and his accomplices ran from the scene of the crime. *Supra* at 610. It is reasonable to conclude that this court omitted that fact from its opinion in *Delgado* because it considered that fact insignificant.

In *Delgado*, 367 Mass. 432, 435-436 (1975), we said: "To a large extent the issues raised as to the armed robbery indictment are answered by our decision in *Commonwealth* v. *Tarrant*, [367 Mass.] 411 (1975), wherein we apply the apparent ability standard in defining a dangerous weapon for purposes of armed robbery (G. L. c. 265, § 17), leaving to the jury 'whether the instrumentality under the control of the perpetrator has the apparent ability to inflict harm, whether the victim reasonably so perceived it, and whether the perpetrator by use of the instrumentality intended to elicit fear in order to further the robbery.' *Commonwealth* v. *Tarrant, supra* at 417. The twist in this case is that there was no direct evidence of a gun, no gun was seen by the store manager, and no gun was found on the defendant's person or in the area where the defendant was apprehended. Thus, *the only indication of the presence of a gun was the defendant's statement*, 'Hold him or I'm going to shoot him.' The defendant submits that even if the apparent ability standard of the *Tarrant* case is the law, it would be error to extend that reasoning to *a case such as this where, in effect, the gun is 'present' only by verbal assertion*" (emphasis supplied). Somewhat later in the *Delgado* opinion this court said: "The words spoken by the defendant in this encounter were clearly informational, warning the victim store manager that the defendant would and could shoot and thus impliedly informing the victim of the presence and possession of a gun. In our opinion this was clearly sufficient, particularly in the circumstances of an ongoing robbery, to cause the victim reasonable apprehension with

respect to his physical security. *Hence* the crime as charged was robbery 'with a dangerous weapon, to wit: a gun,' and the jury could reasonably conclude that the defendant should be taken at his word" (emphasis supplied). *Id.* at 437.

"Hence" means "therefore" or "because of a preceding fact or premise." Webster's Third New Int'l Dictionary 1056 (1961). Our language in *Delgado*, fairly construed, means that because the defendant's words reasonably caused the victim to fear the use of a gun, the robbery was robbery "with a dangerous weapon, to wit: a gun," even though the defendant did not actually have a gun. As will be seen below, this was but a natural extension of the rule laid down in *Commonwealth* v. *Henson*, 357 Mass. 686, 693 (1970), and *Commonwealth* v. *Tarrant*, 367 Mass. 411, 416 (1975). The *Delgado* opinion must be read as a whole. It logically progresses to the conclusion expressed by the words, *supra* at 437: "Hence, the crime as charged was robbery 'with a dangerous weapon, to wit: a gun.'" This can only mean that the crime as charged was armed robbery as a matter of law. The words, "and the jury could reasonably conclude that the defendant should be taken at his word," in the context of the entire opinion, are mere surplusage. In my opinion, we have never held, and we should not announce now, that a defendant's statement, in the course of a robbery, that he has a gun, together with evidence that he could have disposed of one, warrants a finding that he actually had a gun.

II

The court states that "[i]f a robbery committed while *apparently* armed with a dangerous weapon is to be equated with armed robbery, the Legislature may make the appropriate amendment. *Supra* at 610-611.[1] I agree. However,

---

[1] If the Legislature is concerned with deterrence of violence by assailants, as this court and the Appeals Court have previously recognized, *Commonwealth* v. *Mowry*, 11 Allen 20 (1865); *Commonwealth* v. *Goldman*, 5 Mass. App. Ct. 635 (1977), it may prefer not to amend the statute. If the crime is the same regardless whether the assailant uses an actually,

the court goes on to say that "[w]e should not construe
G. L. c. 265, § 17, a criminal statute, so loosely as to elimi-
nate the requirement that there be some instrumentality
which presents 'an objective threat of danger to a person of
reasonable and average sensibility,' *Commonwealth* v. *Tar-
rant,* 367 Mass. 411, 416 (1975)," footnoting *Common-
wealth* v. *Henson,* 357 Mass. 686, 693 (1970). *Supra* at 611.
In other words, we cannot read § 17 "so loosely" as to in-
clude a robber "apparently armed" with a dangerous wea-
pon, but can read it so loosely as to include a robber armed
with an "apparently dangerous" weapon. The words of the
statute, "armed with a dangerous weapon," do not permit
such a reading.

We held in *Commonwealth* v. *Henson,* 357 Mass. 686
(1970), that for assault by means of a dangerous weapon the
instrumentality used by the defendant need not be capable
of inflicting harm "if the evidence shows an apparent ability
to accomplish the battery by means of the particular weap-
on used." *Id.* at 693. In *Commonwealth* v. *Tarrant,* 367
Mass. 411 (1975), we held that to prove the crime of armed
robbery, the Commonwealth "was not required to have af-
firmatively demonstrated that the [instrumentality] was ac-
tually dangerous (*Commonwealth* v. *Henson, supra,*) or
was in fact used in a harm-inflicting manner, since the
proper inquiry is whether the instrumentality is such as to
present an objective threat of danger to a person of reason-
able and average sensibility." *Id.* at 415-416. It was a
small step to take, and we took it in *Delgado* to hold that,
within the meaning of G. L. c. 265, § 17, one who pretend-
ed to be armed was actually armed. The court announces
today that a robber's oral threat in the course of a robbery
that he is carrying a weapon that is capable of inflicting
serious bodily harm, in the absence of some instrumentality,
is not enough to constitute armed robbery, thereby effec-
tively overruling *Delgado* (as I construe that case). How-

rather than an apparently, dangerous weapon, the Legislature might con-
clude that assailants will tend to use the former.

ever, the court holds, a robber's threat by means of an instrumentality that is incapable of inflicting serious harm, is enough, thereby reaffirming *Henson* and *Tarrant*.

In my opinion, neither mere words nor an instrument incapable of inflicting serious harm, used to threaten a robbery victim, is sufficient under § 17 to elevate unarmed robbery to armed robbery. I fail to see a good reason to distinguish between a statement plus a finger in a pocket and a statement plus a pocket comb or a pen. Yet, as the law is set out today, a robber who effectively simulates a gun by means of a comb is "armed with a dangerous weapon," whereas one who uses his finger with the same result is not.

Criminal statutes must be strictly construed. *Commonwealth* v. *Devlin*, 366 Mass. 132, 137 (1974). *Commonwealth* v. *Federico*, 354 Mass. 206, 207 (1968).[2] Just as we must not construe "being armed with a dangerous weapon" to mean "being or apparently being armed with a dangerous weapon," so, too, we must not construe it to mean "being armed with a dangerous or apparently dangerous weap-

---

[2] Mr. Justice Holmes explained the reason for this rule in an opinion holding that aircraft did not fall within the meaning of "motor vehicle" for the purposes of the National Motor Vehicle Theft Act of October 29, 1919. The act defined "motor vehicle" as "an automobile, automobile truck, automobile wagon, motor cycle, or any other self-propelled vehicle not designed for running on rails." *McBoyle* v. *United States*, 283 U.S. 25, 26 (1931). He wrote: "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft, simply because it may seem to us that a similar policy applies, or upon the speculation that, if the legislature had thought of it, very likely broader words would have been used." *Id.* at 27. The United States Supreme Court has stated a second purpose for the rule in addition to that of serving notice: "The rule . . . is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820).

on." Consequently, in addition to overruling *Delgado*, I would overrule *Tarrant*. Similarly, we should not read G. L. c. 265, § 15B, which proscribes assault "by means of a dangerous weapon," to include assault by means of an apparently dangerous weapon. Therefore I would also overrule *Henson*. To the extent that *Commonwealth* v. *Appleby*, 380 Mass. 296 (1980), and *Commonwealth* v. *Perry*, 6 Mass. App. Ct. 531 (1978), are at variance with this concurrence, I would overrule them. I would announce that henceforth, unless the Legislature amends G. L. c. 265, § 17, robbery is unarmed unless the defendant possesses an inherently dangerous instrumentality, *Commonwealth* v. *Mowry*, 11 Allen 20 (1865), or an instrumentality that was used to produce serious bodily harm, see *Commonwealth* v. *Farrell*, 322 Mass. 606, 615 (1948), or the attempt, or threat, ingredient of the robbery was by means of an instrumentality capable of producing serious bodily harm in the manner attempted or threatened.[3] I would announce that henceforth, unless the Legislature amends G. L. c. 265, § 15B, for assault "by means of a dangerous weapon," the attempted, or threatened, battery must be by means of an instrumentality that is inherently dangerous or is capable of producing serious bodily harm in the manner attempted or threatened. To go beyond such construction is to violate the rule of strict construction of criminal statutes.

---

[3] A reading of § 17 to require actual ability to harm when threats are made by means of noninherently dangerous weapons is consistent with interpretations of similar statutes in other jurisdictions. See, e.g., *People* v. *Aranda*, 63 Cal. 2d 518 (1965); *Hutton* v. *People*, 156 Colo. 334 (1965); *People* v. *Ratliff*, 22 Ill. App. 3d 106 (1974); *People* v. *Trice*, 127 Ill. App. 2d 310 (1970); *Decker* v. *State*,      Ind. App.      (1979) (386 N.E.2d 192 [Ind. App. 1979]); *State* v. *Matthews*, 67 Ohio Op. 2d 190 (Ct. App. 1974). See also *State* v. *Keller*, 214 N.C. 447 (1938); *Cooper* v. *State*, 201 Tenn. 149 (1956). See generally Robbery By Means of Toy or Simulated Gun or Pistol, Annot., 81 A.L.R.3d 1006 (1977 & Supp. 1981).

NOLAN, J. (dissenting). I dissent. The issue is a narrow one, i.e., the legal sufficiency of the evidence tending to prove that the defendant had a gun when he robbed the victim.

The defendant, with his hand in his jacket, said that he would "pull the trigger" if the victim did not comply with his demand for money. This declaration of intent or threat in the context of this case is an evidentiary admission from which the jury may infer that he was then carrying a gun. See P.J. Liacos, Massachusetts Evidence 275-281 (5th ed. 1981). At the least, such a statement, if the jury believe that he made it, should be regarded as "enough evidence that could have satisfied a rational trier of fact . . . beyond a reasonable doubt" that the defendant had a gun. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). A different case is presented (and a different result is demanded) if one who declares that he has a gun is apprehended immediately after such declaration and found to be unarmed. This is not our case, however. Here, he could have disposed of the gun between the vestibule and the alley. For the purpose of ruling on a motion for directed verdict (now denominated a motion for required finding of not guilty, Mass. R. Crim. P. 25 [b], 378 Mass. 896 [1979]), it is not controlling that the victim never saw the gun and that no gun was found at the scene. In *Commonwealth* v. *Delgado*, 367 Mass. 432, 436-437 (1975), there was no direct evidence of a gun, a gun was not seen by the victim, and no gun was found on the defendant's person or at the scene of the defendant's arrest. The only evidence of the presence of a gun was the defendant's statement: "Hold him or I'm going to shoot him." *Id.* at 436. On the issue whether this was sufficient evidence on which to find that the defendant had a gun, this court said "that the defendant should be taken at his word." *Id.* at 437. So, too, in the present case, the jury should have been permitted to take the defendant at his word that he had a gun.