COMMONWEALTH *vs.* JOHN TARRANT (No. 2). November 12, 1982. The defendant appeals from his convictions on indictments charging him with armed robbery, and armed assault with intent to rob. G. L. c. 265, §§ 17 and 18. He alleges error in (1) his classification as a "major violator"; (2) the denial of his request that the trial judge recuse himself; (3) the denial of his motion for a directed verdict (now denominated a motion for a required finding of not guilty, Mass.R.Crim.P. 25[b], 378 Mass. 896 [1979]); and (4) the trial judge's jury instructions, to which no objection was made. We affirm the judgments.

There was evidence from which the jury could have found the following facts. On October 26, 1976, about 9:35 P.M., the defendant wearing a wrap-around coat with deep front pockets and carrying a travel bag, entered the Longwood Hospital where Joan Carey, a receptionist, and John Dadman, a security guard, were on duty. The defendant put the robbery in motion by handing Dadman a note which read: "This is a holdup, put all the money in a bag or I will shoot, hurry." Dadman took the defendant at his word and handed the note to Carey. In allowing Carey to answer a call on the switchboard, the defendant warned her not to say or to do anything or he would "shoot to kill." His hand was inside the travel bag, and he was pointing the bag at Carey.

Dadman, Carey, and the defendant went into the nurses' office where the defendant, still pointing the travel bag at Carey, took her money and rings. Dadman had no money on his person. As Carey watched the defendant, she began to suspect that, in fact, he did not have a gun, and she thought about grabbing for the bag. She reasoned that if her suspicions proved wrong and she should get hurt, she was in a hospital and aid would be available. With more courage than wisdom, she lunged for the travel bag, hitting and raising the defendant's arm, and the travel bag along with it. She shouted to Dadman that the defendant did not have a gun and ran from the office to call for assistance on the public address system. As she did so, Dadman jumped at the defendant and there ensued a turbulent struggle which sent Dadman crashing into a cabinet, breaking the glass door and cutting his arm, and then to the floor, banging his head. The defendant fled, leaving his travel bag behind, with Dadman and another hospital employee in pursuit. They were unable to catch the defendant, nor could they find a gun after a search of the premises. The defendant was arrested about two weeks later, but no gun was ever recovered.

1. All of the defendant's contentions concerning his classification as a "major violator" by the district attorney's office and his related argument that the trial judge should have recused himself were considered and rejected in *Commonwealth v. Coyne,* 372 Mass. 599, 600-604 (1977). As to the remaining grounds alleged by the defendant in support of his motion

for recusal, see *Commonwealth* v. *Leventhal,* 364 Mass. 718, 722 (1974); *Commonwealth* v. *O'Connor,* 7 Mass. App. Ct. 314, 320-321 (1979).

2. The facts that neither Carey nor Dadman saw a gun during the robbery, that Carey came to believe that the defendant did not have a gun, and that no gun was ever found do not remove this case from the holding in *Commonwealth* v. *Delgado,* 367 Mass. 432, 435-437 (1975), and bring it within that of *Commonwealth* v. *Howard,* 386 Mass. 607, 609-611 (1982). Carey's suspicions were no more than that, and she had no actual knowledge of whether the defendant possessed a gun. Her testimony was to the effect that her belief was sufficient to make the risk of harm acceptable to her. Dadman gave no testimony on the point whether he came to know from his struggle with the defendant that he did not have a gun; rather, Dadman related that he searched for a gun after the defendant had fled. We have examined the defendant's coat, and the front pockets are approximately eleven inches long and nine inches wide, ample room for a gun. Additionally, the defendant was not apprehended until two weeks after the robbery. Contrast *ibid.,* where no gun was seen or found *and* where the defendant had no opportunity or reason prior to his arrest to dispose of the gun he claimed to have. Here, "the jury could reasonably conclude that the defendant should be taken at his word." *Commonwealth* v. *Delgado,* 367 Mass. at 437. The trial judge was not in error in denying the defendant's motions for directed verdicts on so much of the indictments charging him with armed robbery and armed assault. And, where "the jury were warranted in inferring beyond a reasonable doubt that, in the circumstances, [Tarrant] had a gun," *Commonwealth* v. *Howard,* 386 Mass. at 610, we see no error in the trial judge's instructions to the jury concerning the defendant's apparent ability to carry out his threats where no one actually saw a gun.

*Judgments affirmed.*