## Commonwealth vs. Walter L. Powell.

Plymouth. December 8, 2000. - February 22, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Robbery. Practice, Criminal,* Instructions to jury, Reasonable doubt. *Words,* "Dangerous weapon."

At the trial of an indictment for armed robbery, there was no error in the judge's instruction that, if the object (a wooden "gun") wielded by the defendant was not actually capable of inflicting death or serious injury, it could only constitute a dangerous weapon if it reasonably appeared capable of causing death or serious injury; further, the evidence supported the jury's conclusion that the object was a dangerous weapon, and the robbery was therefore an armed robbery. [401-404]

In a criminal case, there was no error in the judge's instruction to the jury on reasonable doubt. [404-405]

Indictments found and returned in the Superior Court Department on February 13, 1998.

The cases were tried before *Charles F. Barrett,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bruce Ferg,* Committee for Public Counsel Services, for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

Sosman, J. The defendant, Walter L. Powell, was convicted of armed robbery (G. L. c. 265, § 17), kidnapping (G. L. c. 265, § 26), and assault and battery (G. L. c. 265, § 13A).[1] The defendant claims on appeal that the trial judge erred in denying his motion for a required finding of not guilty as to the armed robbery charge (thereby reducing it to unarmed robbery) on the ground that the object used by the defendant was not a danger-

---

[1]The conviction of assault and battery was placed on file with the defendant's consent and is not before the court on appeal. See *Commonwealth v. McCravy,* 430 Mass. 758, 759 n.1 (2000).

ous weapon. The defendant also contends that the judge's instruction on reasonable doubt was deficient. We transferred this case from the Appeals Court on our own motion. We affirm the convictions.

1. *Background.* On January 16, 1998, the victim, Theresa Campbell, was working as a cashier in a gasoline station convenience store in Plymouth. At about 10:30 P.M., when there were no other customers or employees present, the defendant entered the store and came up to the counter as if to make a purchase. He then asked the victim if she could give him the money in the cash register. The victim did not think the defendant was serious, and she jokingly told him she could not do that because she would "get in trouble." The defendant then walked around the counter and, standing directly beside the victim, told her to open the register. He also told the victim not to move because he had a gun, and he threatened to shoot the victim if she "tried anything."

The victim could see that the defendant had an object under his jacket, and he put his right hand on it a few times. She could see the very tip of the object, about one-half to one inch of it at most, protruding out the top of the jacket. The victim said it looked like the end of "two sticks coming up, like wooden sticks." The victim was not certain exactly what the object was: "I didn't know, you know, if it was a real gun, or what he had. I just knew it was an object in his jacket."

The defendant removed approximately $170 in cash from the register. As he left the store, he told the victim to follow him. The victim did so, and testified at trial that she followed the defendant's instructions because she was scared and did not know if the defendant was going to shoot her. Once outside the store the defendant, with the victim following, walked down the street and through the parking lot of a nearby school. At one point, the defendant turned around and grabbed the victim by the hands, forcing her to walk next to him. After walking for about five to ten minutes, the defendant told the victim to turn around and run back to the store. The victim returned to the store and telephoned the police.

A Plymouth police officer, after hearing a radio dispatch regarding the robbery, began searching the area for a suspect. He found a wooden object in the roadway, about 200 to 300 yards away from the store. It was a replica of a double barrel shotgun, with two wooden dowels in place of the barrels, a

wood stock, and a clothespin to replicate the hammer. The replica gun was subsequently identified by the victim as the object she had seen protruding from the robber's jacket.

Three days later, the victim was stopped at a red light when she saw the defendant walk by her car. She recognized him, contacted the police immediately, and the defendant was apprehended shortly thereafter.

2. *Sufficiency of the evidence.* In order to commit the crime of armed robbery, the defendant must "be[] armed with a dangerous weapon" at the time of the robbery. G. L. c. 265, § 17. Thus, the Commonwealth must prove beyond a reasonable doubt that the defendant had, at the time he was in the store, an object that would qualify as a "dangerous weapon." The standard definition of "dangerous weapon" includes those items that are, by their nature, capable of causing serious injury or death, but also includes items that are used or displayed in a way such that they reasonably appear capable of causing serious injury or death. *Commonwealth* v. *Tevlin, ante* 305, 311 (2001); *Commonwealth* v. *Tarrant,* 367 Mass. 411, 416-417 (1975). Thus, an object that is, on closer inspection, incapable of inflicting serious injury or death can still be a dangerous weapon if, at the time of the offense, it would have been reasonable to believe that it was capable of inflicting such injury. See, e.g., *Commonwealth* v. *Henson,* 357 Mass. 686, 693-694 (1970) (upholding conviction of assault by means of a dangerous weapon even though defendant's revolver had only blank cartridges); *Commonwealth* v. *Nickologines,* 322 Mass. 274, 277 (1948) (on charge of armed robbery, Commonwealth does not have to prove that defendant's gun was loaded); *Commonwealth* v. *Johnson,* 27 Mass. App. Ct. 746, 748-749 (1989) (victim's reasonable perception that object in defendant's pocket was gun sufficient to support conviction of armed assault with intent to rob even though object was only hairbrush); *Commonwealth* v. *Garafolo,* 23 Mass. App. Ct. 905, 907 (1986) (defendant used toy handgun to commit armed assault with intent to rob); *Commonwealth* v. *Nicholson,* 20 Mass. App. Ct. 9, 17 (1985) (armed robbery could be committed with "fake plastic gun" if "it reasonably appeared capable of inflicting bodily harm"); *Commonwealth* v. *Perry,* 6 Mass. App. Ct. 531, 533-536 (1978) (armed robbery committed with black plastic toy pistol). See also *McLaughlin* v. *United States,* 476 U.S. 16, 17-18 (1986) (unloaded gun displayed during bank robbery is "dangerous weapon" under

Federal bank robbery statute); *United States* v. *Cannon,* 903 F.2d 849, 854 (1st Cir.), cert. denied, 498 U.S. 1014 (1990) (armed robbery of bank using plastic toy gun); *United States* v. *Martinez-Jiminez,* 864 F.2d 664, 666-667 (9th Cir.), cert. denied, 489 U.S. 1099 (1989) (same).

Here, the judge provided the jury with a correct definition of "dangerous weapon," giving appropriate emphasis to the requirement that, if the object was not actually capable of inflicting death or serious injury, it could only constitute a dangerous weapon if it reasonably appeared capable of causing death or serious injury.[2] *Commonwealth* v. *Tevlin, supra* at 312 n.3. This instruction was consistent with case law holding that a replica or fake weapon is a dangerous weapon if the victim would, in all the surrounding circumstances, reasonably believe that the object was a real weapon. *Commonwealth* v. *Johnson, supra. Commonwealth* v. *Garafolo, supra. Commonwealth* v. *Nicholson, supra. Commonwealth* v. *Perry, supra.*

The defendant contends that our decision in *Commonwealth* v. *Howard,* 386 Mass. 607 (1982), is to the contrary and that fake or toy weapons cannot qualify as dangerous weapons. Nothing in the *Howard* decision changes the standard definition of a dangerous weapon, nor does it prevent inoperable, fake, or replica weapons from being dangerous weapons. In *Howard,* the defendant threatened his robbery victim by telling her that he would "pull the trigger" if she did "anything foolish." *Id.* at 607. The victim had not seen any gun or any object resembling a gun in the defendant's possession. Police arrived while the robbery was still in progress, and the defendant, arrested at the scene without an opportunity to dispose of any weapon, was found to have no gun on him. *Id.* at 609-610. The court held that, where the defendant did not have any weapon in his pos-

---

[2] The judge's instruction included the following: "A dangerous weapon is any instrument which by nature of its construction, or the manner of it[s] use, is capable of causing grievous bodily injury or death, or could be perceived by a reasonable person as so capable. . . . This means it is not necessary that the instrument be actually capable of causing serious bodily harm or death, so long as it appears to a reasonable person to be capable of doing so. For example, for the purpose of establishing this element of armed robbery, an unloaded gun or a gun which cannot fire bullets can be a dangerous weapon, if the gun appears capable of causing serious bodily harm to the victim. A person who uses a toy gun or other fake weapon to commit a robbery may be convicted of an armed robbery if the victim reasonably took it to be a real gun or weapon which was capable of inflicting bodily injury."

session, he could not have been "armed with a dangerous weapon." *Id.* at 610. The defendant's mere statement that he had a weapon, when he in fact had no form of weapon at all, would not permit the jury to conclude that the defendant was "armed" with a weapon: "[W]here a robber had no instrumentality at all, although he said he had a gun, a conviction of armed robbery is not warranted." *Id.* at 608.

In that context, the court noted that the crime of armed robbery did not extend to one who was only "apparently" armed. *Id.* In holding that being only "apparently" armed was not sufficient, the court did not alter the underlying definition of dangerous weapon. We merely specified, consistent with the statute, that the defendant had to have some object in his possession and that, when he did not have any object at all, the defendant's statements to the victim claiming to have a weapon would not suffice.[3] Recognizing that a robber's claim to have a weapon would engender the same fear in the victim, whether the robber actually had a weapon or not, the court left it to the Legislature to determine whether the armed robbery statute should be amended to include "robbery committed while *apparently* armed" (emphasis in original). *Id.* at 610-611.

In *Howard*, we reiterated the definition of dangerous weapon, requiring the Commonwealth to prove that the defendant was armed with "some instrumentality which presents 'an objective threat of danger to a person of reasonable and average sensibility.' " *Id.* at 611, quoting *Commonwealth* v. *Tarrant*, 367 Mass. 411, 416 (1975). Where, as here, there was evidence that the defendant had an actual object in his possession, it was for

---

[3]The court distinguished *Commonwealth* v. *Delgado*, 367 Mass. 432, 437 (1975), where the robber's statement about a gun, made to the victim during the course of the robbery, was deemed sufficient evidence for the jury to infer that the robber was armed. In *Delgado*, the defendant had no weapon on him when he was later apprehended, but he had run out of the store after the robbery and thus had had an opportunity to dispose of a weapon prior to being captured. See *Commonwealth* v. *Delgado*, 2 Mass. App. Ct. 865, 866 (1974), *S.C.*, 367 Mass. 432 (1975). Where there had been that opportunity to get rid of a weapon after the robbery, the jury could still reasonably infer, from the defendant's prior statement, that he had in fact been armed at the time of the offense. *Id.* The problem in *Commonwealth* v. *Howard*, 386 Mass. 607 (1977), was that, with no opportunity to dispose of any weapon, the discovery that the defendant had no weapon on him meant that he could not have had any such weapon at the time of the robbery and it was therefore no longer reasonable to infer the presence of a weapon from his statement alone. *Id.* at 610. See *Commonwealth* v. *Jackson*, 419 Mass. 716, 723-725 (1995).

the jury to determine whether that object came within the definition of dangerous weapon.

The jury were properly instructed that, in order for a fake weapon to be considered a "dangerous weapon," it would have to be "reasonable" for the victim to believe that the weapon was real or that it was capable of inflicting death or serious bodily injury. There was evidence from which the jury could conclude that it would be reasonable for the victim to believe that the object under the defendant's jacket was a gun. The defendant claimed to have a gun; there was an object under his jacket; the object was of the size and shape of a gun; and the defendant gestured at that object with his hand.[4] The victim testified that she complied with the defendant's orders, including his command that she come with him when he left the store, because of her fear of being shot. Where it reasonably appeared, in all the circumstances, that the object in the defendant's possession was capable of inflicting serious bodily injury or death, the jury could conclude that that object was a dangerous weapon and that the robbery was therefore an armed robbery.

3. *Jury instruction on reasonable doubt.* The defendant claims that the judge's instruction on proof beyond a reasonable doubt was defective, requiring reversal of his convictions, because the judge's recitation of the definition found in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), did not include the entire *Webster* definition. Specifically, the defendant objects that the judge did not include *Webster*'s explanation that "it is not sufficient to establish a probability, though a strong one . . . that the fact charged is more likely to be true than the contrary." *Id.*

It is true that the judge did not include this language within what he told the jury was his quotation from *Commonwealth* v. *Webster*, *supra*. However, he had already told the jury, immediately prior to giving them the *Webster* definition, that "[a] verdict of guilty cannot be based on mere probability, specula-

---

[4]That the victim perceived the tip of the object as something "wooden" did not make it unreasonable for her to fear that the object was a real gun. Seeing the entire object, one can readily perceive that it is nothing but wood and must be fake (despite its realistic shape and dimensions), but a mere glimpse of something wooden at the very tip would not, by itself, necessarily signal that the object being referred to as a gun was in fact only a replica. Again, the jury were correctly instructed on this issue, and the jury were entitled to take all of the surrounding circumstances into account in assessing whether it would be reasonable for the victim to think that the object was capable of inflicting death or serious bodily injury.

tion or suspicion, or even a strong probability of guilt." Then, within his recitation of the *Webster* language, the judge again told the jury that "if the Commonwealth has established only that it is more probable than not that the [d]efendant has committed the offense, then that is not sufficient. You must find the [d]efendant not guilty." Taken together, the judge told the jury that "even a strong probability" of guilt was not sufficient to convict and, in the context of the *Webster* definition, again told the jury that proof of guilt to a standard of "more probable than not" was not sufficient. That the *Webster* definition given to the jury did not repeat the "strong probability" language that the judge had just given them does not make this charge defective.

We reiterate that the *Webster* instruction itself "carries great weight, and conveys to the jury the proper solemn consideration and degree of certitude," *Commonwealth* v. *Rosa*, 422 Mass. 18, 29 (1996), and that judges are therefore still encouraged to use the *Webster* definition of proof beyond a reasonable doubt. We do not, however, require trial judges "to charge in the exact words of *Commonwealth* v. *Webster*, [*supra*]." *Commonwealth* v. *Randolph*, 415 Mass. 364, 367 (1993). As on any challenge to the adequacy of a reasonable doubt instruction, "we examine the challenged language, in the context of the charge as a whole, in order to determine whether 'a reasonable juror could have used the instruction incorrectly.' " *Commonwealth* v. *LaBriola*, 430 Mass. 569, 570-571 n.3 (2000), quoting *Commonwealth* v. *Smith*, 427 Mass. 245, 249-250 & n.6 (1998). Here, the placement of the "strong probability" language immediately prior to, rather than as part of, the *Webster* quotation would not conceivably cause any juror to misapprehend the Commonwealth's burden of proof. We are satisfied that, taken as a whole, the judge's charge "correctly conveyed to the jury the level of proof required to convict the defendant." *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 572 (1994), cert. denied, 513 U.S. 1091 (1995).

*Judgments affirmed.*