## Commonwealth *vs.* George Burt, Sr.

No. 95-P-247.

Essex. January 16, 1996. - April 5, 1996.

Present: Armstrong, Gillerman, & Jacobs, JJ.

*Intimidation of Witness. Witness,* Intimidation. *Practice, Criminal,* Instructions to jury.

At the trial of a complaint charging intimidation of a witness in violation of G. L. c. 268, § 13B, evidence of the defendant's statements was sufficient to establish beyond a reasonable doubt an "endeavor" of the defendant by "threats" or "intimidation" to "influence" the victim, and there was sufficient evidence to establish that the victim was a "witness" or a "person furnishing information" within the meaning of the statute. [277-278]

COMPLAINT received and sworn to in the Lynn Division of the District Court Department on October 23, 1992.

On transfer to the jury session of the Peabody Division, the case was tried before *Robert E. Hayes,* J.

*Douglas J. Beaton* for the defendant.

*Anne J. Sperry,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. A jury of six, sitting in the Peabody District Court, found the defendant guilty of a complaint charging him with intimidating a witness in violation of G. L. c. 268, § 13B.[1] The defendant's appeal from the order denying his motion for a required finding of not guilty brings up

---

[1]In pertinent part, § 13B, as amended through St. 1990, c. 369, states: "Whoever, directly or indirectly, willfully endeavors by means of . . . intimidation, force or threats of force to influence, impede, obstruct, delay or otherwise interfere [1] with any witness . . . in any stage of a trial or other criminal proceeding or [2] with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth . . . shall be punished . . ." (bracketed numbers added for later reference).

questions regarding the sufficiency of the evidence as well as questions regarding the interpretation of § 13B. He also challenges the judge's instructions. We affirm.

Viewing the evidence in the light most favorable to the prosecution, the jury could have found the following facts.The hostile relationship between the defendant and the victim, Marguerite Puleo (Puleo), began as the result of a dispute about a used car which Puleo's son Michael purchased from the defendant in 1982. The defendant was the proprietor of a used car dealership. As a result of that dispute, Puleo undertook her own investigation of the defendant and his business.

In March of 1992, Puleo, still pursuing her investigation of the defendant, contacted Lieutenant J. M. Roach of the Lynn police department, regarding information she had obtained about the defendant's business. By then, the Lynn police department had been investigating the defendant's business for three or four months. Puleo told Roach about some of the details of the defendant's used car business and that the business frequently changed its name while the same people continued to work there. The police confirmed that in excess of twenty different names were used for the business. Through an array of photographs, Puleo also identified Ralph Newton, James Vantresca, George Burt, Jr., Anthony Correo, and Thomas Largano as sales persons involved in the defendant's business.

Based in part on the information provided by Puleo, Roach obtained a search warrant for the premises at which the defendant conducted his business. Puleo was present during the execution of the search warrant on or about July 5, 1992. She pointed out the location of the dealer plates and various files.

As a result of the search, and prior to October 7, 1992, police charged the defendant with altering a motor vehicle identification number. Complaints were also issued at or about the same time against the five individuals previously identified by Puleo. The charges against these men included larceny, receiving stolen property, defrauding an insurer, and changing vehicle identification numbers.

On October 7, 1992, while the police investigation was ongoing and the criminal cases against the defendant and the other five men were pending, Puleo confronted the defendant in front of the Lynn District Courthouse. She said, "Burt,

George Burt?" "I thought you were in jail." The defendant answered, "Where's your husband?" Puleo said that her husband was not there, at which point the defendant asked Puleo whether she was afraid of him. She said, "No." The defendant then asked, "How old is Michael? He's going to be 36? Do you think he'll make it to be 36?" After asking again whether she was afraid of him (Puleo reiterated that she was not), the defendant stated, "And you have a daughter Elizabeth? She has Elizabeth S. [Puleo] Insurance in Marblehead? I know what kind of car she drives. Are you afraid of me now?" Again Puleo said she was not afraid. Finally, according to Puleo, the defendant moved closer, at which point she asked someone nearby to get a court officer. The defendant then stated, "Why don't you ask your friends at City Hall to come now? I'm gonna put your son away." At that point Puleo ran down the courthouse steps and into her car. Two days later, Puleo reported the incident to the Lynn police.

The defendant's words were sufficient to constitute an "endeavor" to influence Puleo by means of "threats" or "intimidation." Nevertheless, the defendant argues that Puleo was not a "witness" within the meaning of the statute because she admitted that she had no direct knowledge of the charges against the defendant or against the five men associated with the defendant. The defendant also argues, regarding the second branch of § 13B (see note 1, *supra*), that "Puleo was [not] a person 'furnishing information' to a criminal investigator *on October 7, 1992 . . .*" (emphasis supplied).

A purpose of the statute is the protection of participants in judicial proceedings and thereby the protection of the public interest in the due administration of justice. See *United States* v. *Chandler*, 604 F.2d 972, 974 (5th Cir. 1979) (construing a similar Federal statute, 18 U.S.C. § 1503 [1994]). See also *Osborn* v. *United States*, 385 U.S. 323, 333 (1966) (the use of the word "endeavor" in § 1503 "got rid of the technicalities which might be urged as besetting the word 'attempt,' and it describes any effort or essay to accomplish the evil purpose that the section was enacted to prevent . . ."). To the same effect is *Commonwealth* v. *Rondeau*, 27 Mass. App. Ct. 55, 59-60 (1989). Thus the statute is available "so long as there is a *possibility* that the target of the defendant's activities will be called upon to testify in an official proceeding" (emphasis supplied). *United States* v. *Shannon*, 836 F.2d 1125, 1128 (8th

Cir. 1988). The jury could have credited Roach's testimony that Puleo was a potential witness regarding the numerous names used in the defendant's business. Further, Puleo received a "yellow slip of paper" to appear at the defendant's trial,[2] and she in fact appeared. The information possessed by a potential witness need not bear directly on an essential element of the crime (as the defendant argues); it need only be, as here, relevant and material evidence. *United States* v. *Tedesco*, 635 F.2d 902, 907 (lst Cir. 1980). The fact that Puleo never testified is of no importance. See *United States* v. *Shannon, supra* at 1128.

We also reject the argument that because Puleo was not furnishing information to the police on the day she allegedly was intimidated, the statute is not satisfied in that regard. The statute is "aimed at deterring interference with *future communication of information*" (emphasis supplied). *United States,* v. *San Martin,* 515 F.2d 317, 320 (5th Cir. 1975) (construing similar provisions appearing in 18 U.S.C. § 1510). *United States* v. *Segal,* 649 F.2d 599, 603 (8th Cir. 1981) (same). Here, the police investigation was ongoing on the date of the alleged intimidation. Based on Puleo's prior assistance to the police, there was an adequate basis for the jury to infer that additional information regarding the pending criminal complaints against the defendant and his five salesmen would be forthcoming from Puleo in the future.

We conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant violated both the "witness" branch of § 13B, as well as the "furnishing information" branch of the same section.[3]

We have also reviewed the judge's charge to the jury. There was no error in the instruction that the word "witness" included "potential witness." See *Shannon, supra* at 1128. See also *Hunt* v. *United States,* 400 F.2d 306, 307 (5th Cir. 1968); *Tedesco, supra* at 907.

*Judgment affirmed.*

---

[2]The jury could have inferred from this, and from Roach's testimony that Puleo was a potential witness, that Puleo received a summons to appear at the defendant's trial.

[3]The judge instructed the jury that unanimity among the six jurors was required to convict either as to the "witness" branch of § 13B, or as to the "furnishing information" branch of that section.