COMMONWEALTH vs. MICHAEL KING.

No. 06-P-198.

Hampden. January 4, 2007. - May 21, 2007.

Present: LENK, COWIN, & GRAHAM, JJ.

*Robbery. Intimidation of Witness.*

At the trial of an indictment charging armed robbery, the judge did not err in
denying the defendant's motion for a required finding of not guilty, where
the evidence (consisting of the defendant's own statement that he was
armed and his opportunity to dispose of the weapon prior to his arrest)
warranted the jury's finding that the defendant actually possessed a gun at
the time of the robbery, in violation of G. L. c. 265, § 17. [115-119]
At the trial of an indictment charging witness intimidation, in violation of
G. L. c. 268, § 13B, where the Commonwealth proceeded under that por-
tion of the statute that prohibits wilful interference "with any person
furnishing information to a criminal investigator relating to a violation of a
criminal statute of the commonwealth," the evidence clearly demonstrated
that the defendant's purpose in making the statement in question to the
witness was to prevent the witness from reporting a crime to the police
[119-120]; moreover, it was not necessary for the Commonwealth to
demonstrate that at the time of the defendant's statement, the witness was
currently engaged in furnishing, or in attempting to furnish, information to
a criminal investigator [120-122], and the judge was not required to so
instruct [122].

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 17, 2004.

The cases were tried before *Judd J. Carhart*, J.

*Andrew S. Crouch* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the
Commonwealth.

COWIN, J. The defendant, Michael King, was convicted by a
Superior Court jury of one count of armed robbery, G. L. c. 265,
§ 17[1]; one count of assault and battery, G. L. c. 265, § 13A;

---

[1] The defendant was initially charged with two counts of armed robbery. On

and one count of intimidation of a witness, G. L. c. 268, § 13B, following the robbery of a convenience store. On appeal, he argues that the judge erred in denying his motion for a required finding of not guilty because the evidence was insufficient to establish either that he was armed with a dangerous weapon at the time of the robbery, or that he interfered with the victim's furnishing of information to a criminal investigator. He also claims that an error in the judge's jury instructions on witness intimidation created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).[2] We conclude that the evidence was sufficient to support the verdicts, and that there was no error in the jury instructions. Accordingly, we affirm the convictions.

1. *Facts.* We summarize the evidence presented at trial in a light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On September 9, 2003, the victim, Michael Jacques, was working alone on a 5:00 P.M. to 12:00 A.M. shift as a clerk at the DB Mart, a convenience store located in Springfield. At approximately 11:30 P.M., the defendant, a frequent patron of the store, entered and left without incident. At midnight, the victim closed the store and began the tasks that had to be completed before he could leave.

Moments later, the defendant returned. He knocked on the locked doors and requested that he be let in to retrieve a pager he had misplaced in the store during his earlier visit. After a brief discussion, the victim allowed the defendant to enter to search for the item. Both men scoured the aisles for several minutes to no avail. When the search proved fruitless, the victim requested that the defendant leave for the night and return in the morning to consult with the store's manager.

Suddenly the defendant struck the victim on the left side of the face with his fist. He followed by tackling the victim and placing him in a "choke hold." The defendant then knocked the victim to the floor and up against his bicycle, which the victim

the second day of the trial, the judge merged the counts into one. The action is not challenged on appeal.

[2]The defendant has not challenged his conviction of assault and battery.

had parked inside the store. With the victim subdued, the defendant proceeded to the cash register.

As the defendant attempted to open the cash register, the victim began to get up from the floor. The defendant warned immediately, "I'm going to blow a hole in your head if you get up and move." Believing the defendant had a gun, the victim heeded the warning and returned to the floor. He did not, however, actually see the defendant with a weapon at any time.

The defendant then demanded that the victim tell him how to open the cash register. The victim complied, and the defendant removed approximately $1,400. He then took the victim's bicycle but, before leaving, inquired as to the location of the videotapes from the store security camera. The victim replied that the videotapes were maintained in the manager's office, and he did not have access to them. The defendant then stated that, "[i]f he saw [the victim] on 22 News [a Springfield television program] he was going to come back and kill [him], [his] whole family, [his] buddy Ben, all of that."[3] The defendant again ordered the victim to remain on the floor, and departed the premises.

A few minutes after, the victim got up from the floor and contacted the police. Responding officers searched the store's immediate surrounding area, but could not locate an individual matching the victim's description of the defendant. An investigation led to apprehension of the defendant on September 11, 2003, one day after the robbery. No weapon was found in his possession or in the vicinity of his person at the time of his arrest.

2. *Armed robbery.* To obtain a conviction of armed robbery under G. L. c. 265, § 17, the Commonwealth must prove beyond a reasonable doubt that the defendant committed a robbery while "armed with a dangerous weapon." *Commonwealth* v. *Smiley,* 431 Mass. 477, 490 (2000). Convictions are not limited to instances in which a defendant actually uses or displays the weapon. "In the Massachusetts decisions to date applying G. L. c. 265, § 17, armed robbery may be made out

---

[3]The victim also testified to a slightly different version of the defendant's statement, specifically, "if he saw himself on 22 TV he was going to come back and kill [the victim] and his whole family."

by proof that the defendant was in possession of a weapon in the course of a robbery but did not display or use it." *Commonwealth* v. *Simpson*, 54 Mass. App. Ct. 477, 479 (2002). This does not mean, however, that the Commonwealth may satisfy its burden merely by showing that a defendant was "*apparently* armed." *Commonwealth* v. *Howard*, 386 Mass. 607, 608 (1982). There must instead be evidence from which a jury could permissibly conclude that the defendant was actually armed at the time of the robbery with some instrumentality which presents an objective threat of danger. *Id.* at 611.

In asserting that denial of his motion for a required finding of not guilty on the armed robbery charge was error, the defendant argues that the victim never observed a weapon during the course of the robbery, and that the only relevant evidence on the subject was the defendant's own threat. We review the denial of the defendant's motion to "determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged . . . ." *Commonwealth* v. *Latimore*, 378 Mass. at 676-677, quoting from *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). In doing so, "[w]e draw all permissible inferences in favor of the Commonwealth." *Commonwealth* v. *Chhim*, 447 Mass. 370, 377 (2006). Applying these criteria, we conclude that a jury finding that the defendant actually possessed a gun at the time of the robbery was warranted.

The defendant relies on *Commonwealth* v. *Howard, supra,* in which a defendant approached the victim on the street, did not display a weapon, but, with his hand in his right pocket, stated: "Walk straight, look down, and don't try anything foolish or I'll pull the trigger." No weapon was visible. The police arrested the defendant at the scene, but a search of his person and the immediate vicinity disclosed that he in fact carried no weapon. A divided Supreme Judicial Court reversed his conviction, concluding that "where a robber had no instrumentality at all, although he said he had a gun, a conviction of armed robbery is not warranted." *Howard*, 386 Mass. at 608. The court stated further that G. L. c. 265, § 17, "should not be read as including

a robbery while *apparently* armed with a dangerous weapon when in fact the defendant was unarmed." *Ibid.*

The defendant argues correctly that the *Howard* case stands for the proposition that an armed robbery conviction requires that the jury find that the defendant actually carried a dangerous weapon at the time of the robbery and, further, that the burden of proof is not satisfied by the defendant's statement that he is armed without more. However, in deciding what evidence additional to the defendant's statement is necessary, *Howard* must be read in conjunction with *Commonwealth* v. *Delgado*, 367 Mass. 432, 436-437 (1975), decided seven years earlier.

In *Delgado*, as a robbery of a convenience store was in progress, the defendant stated to an accomplice, "[h]old him [the store manager] or I'm going to shoot him." *Id.* at 436. The victim never observed a weapon. At the conclusion of the robbery, the thieves fled. The defendant was arrested away from the crime scene at a later date. No weapon was found on his person or nearby. Although the Supreme Judicial Court acknowledged that "as a general rule words are not sufficient to constitute an assault, simple or aggravated, and would therefore not usually be sufficient to meet the robbery requirement," *ibid.*, the court affirmed the armed robbery conviction.

The court clarified the apparent inconsistency by explaining that, in the *Howard* case, there "is the absence of any basis to infer that the defendant may have had a gun that distinguishes [*Howard*] from [*Delgado*]." *Commonwealth* v. *Howard*, 386 Mass. at 610. In the *Delgado* case, on the other hand, the defendant, unlike the defendant in *Howard*, was arrested and searched some time after the robbery and away from the crime scene. "In those circumstances, it was possible that Delgado had a gun and disposed of it. . . . [T]he jury would have been warranted in finding beyond a reasonable doubt that Delgado had a gun." *Ibid.*

It remains a requirement that the Commonwealth prove actual possession of a weapon at the material time, and it remains the law that that burden is not satisfied merely by evidence that the robber said he was armed. Reading *Delgado* and *Howard* together, however, the Commonwealth may obtain a verdict by proof of such a statement together with evidence that the

defendant had an opportunity to dispose of the weapon prior to his arrest. It is that latter evidence that permits the jury to draw the inference that the defendant should be taken at his word. See *Commonwealth* v. *Delgado*, 367 Mass. at 437. Such a case is distinguished from a case in which the defendant is apprehended at the scene and found to have no weapon. In such a situation, there is no basis on which a juror could rationally conclude that the defendant was armed.

The distinction has been criticized. In a concurring opinion in *Howard*, Justice O'Connor stated, "we have never held, and we should not announce now, that a defendant's statement, in the course of a robbery, that he has a gun, together with evidence that he could have disposed of one, warrants a finding that he actually had a gun." *Commonwealth* v. *Howard*, 386 Mass. at 615. This is so, he reasoned, because the subsequent apprehension of the defendant without a weapon in his possession is as consistent with the fact that he never had one as it is with the fact that he had one and disposed of it. Whatever the merit of this analysis, it has not been adopted, and the distinction based on an opportunity to dispose of a weapon has governed proceedings in the twenty-five years since *Howard* was decided. See *Commonwealth* v. *Jackson*, 419 Mass. 716, 723-725 (1995); *Commonwealth* v. *Powell*, 433 Mass. 399, 403 n.3 (2001); *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 748-749 (1989).

In the light of these decisions, we conclude that the jury's inference that the defendant actually carried a dangerous weapon at the time of the robbery was permissible. The evidence supported findings that the defendant threatened to shoot the victim, and that he was arrested a day later without a weapon. Thus, the jury could, if they wished, find that he in fact had a weapon when he made the threat. Contrary to the defendant's argument, the making of a threatening or menacing gesture is not required in order to permit an inference that the defendant carried a dangerous weapon at the time of the robbery. The defendant relies on cases in which gestures or objects consistent with the possession of weapons were involved.[4] None of these cases

---

[4]See, e.g., *Commonwealth* v. *Powell*, 433 Mass. at 400 (object under defendant's jacket); *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. at 747

state that such evidence is necessary for a finding that a defendant possessed a dangerous weapon at the material time.

3. *Intimidation of a witness.* The defendant was convicted of intimidating a witness pursuant to G. L. c. 268, § 13B. At the time of the armed robbery,[5] that section provided for criminal penalties with respect to two different forms of witness intimidation. In the present case, the Commonwealth proceeded under that portion of the statute that prohibits wilful interference "with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth." G. L. c. 268, § 13B, as amended by St. 1970, c. 177. A "criminal investigator" is defined in the same section as "an individual or a group of individuals lawfully authorized by a department or agency of the commonwealth or any political subdivision thereof to conduct, or engage in, an investigation of, or prosecution for, a violation of the laws of the commonwealth in the course of his official duties."[6] "The purpose of the statute, rather obviously, is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings." *Commonwealth* v. *McCreary,* 45 Mass. App. Ct. 797, 799 (1998).

The defendant challenges his conviction on grounds of sufficiency of the evidence. He argues first that his statement that he did not wish to see the victim on television news relates only to the possibility that the victim might describe the events of the robbery to the news media, and does not qualify as interference with the "furnishing [of] information to a criminal

(defendant's hand in his left jacket pocket, held up about waist high, pointing away from him); *Commonwealth* v. *Colon,* 52 Mass. App. Ct. 725, 726 (2001) (defendant placed his hand in his pocket on shiny object victim believed was made of chrome or metal).

[5]The section was revised effective March 30, 2006. The amendments do not reflect on the prior version in any way that would cause us to alter our decision.

[6]Another portion of G. L. c. 268, § 13B, prohibits interference "with any witness or juror in any stage of a trial, grand jury or other criminal proceeding." Because the threatening statement in question was delivered by the defendant at the time of the armed robbery, and thus before any formal criminal proceedings had commenced, this prohibition is not applicable in this case.

investigator." He contends also that there was no evidence that he interfered with a present or ongoing intention or effort on the part of the victim to provide information with respect to the robbery. In a related argument, he challenges as erroneous, and likely to cause a substantial risk of a miscarriage of justice, the judge's failure to instruct that the victim must, at a minimum, actually be in the process of furnishing information to a criminal investigator or have expressed an intention to do so.

In aid of his first argument on the subject, the defendant construes his statement that, "[i]f he saw [the victim] on 22 News he was going to come back and kill [him], [his] whole family, [his] buddy Ben, all of that," as an attempt to interfere only with the victim's contact with the news media. If so, his argument continues, the evidence is insufficient to convict because the statute requires that there be interference with a person's communication with a criminal investigator, and the news media are not criminal investigators (either as defined in G. L. c. 268, § 13B, or in common parlance). The argument divorces the statement from its context, and assigns it an eccentric interpretation.

General Laws c. 268, § 13B, does not require that a defendant specifically articulate a threat not to speak to the police or other criminal investigator. See *Commonwealth* v. *Burt*, 40 Mass. App. Ct. 275, 277 (1996). A fact finder may evaluate the circumstances in which the statement was made, including its timing, to determine whether the defendant in fact intended to intimidate the victim. See *Commonwealth* v. *Robinson*, 444 Mass. 102, 109 (2005). Doing so, this jury could reasonably infer that the defendant's reference to television news was a shorthand recognition that a broadcast featuring the victim would most likely come about if the victim reported the robbery to the police. That it was the defendant's purpose to prevent that communication on the part of the victim by means of a threat seems clear, and such a finding by the jury was plainly warranted. See *Commonwealth* v. *Henault*, 54 Mass. App. Ct. 8, 11-13 & n.6 (2002) (intent can be gleaned from reasonable inferences drawn from circumstantial evidence).

The defendant contends also that the evidence was insufficient to permit a finding that the victim was *presently* engaged

in furnishing information to a criminal investigator or attempting to do so. He argues in this regard that the statute does not proscribe conduct that may only theoretically interfere with a person's communications to law enforcement personnel in the future. Thus, there being no evidence that, at the time of the defendant's statement, the victim was engaged in such a communication, or making an attempt to communicate, the jury could not reasonably find that there was an attempt on the defendant's part to interfere in the sense contemplated by G. L. c. 268, § 13B.

The defendant construes the statute too narrowly, thereby frustrating its purpose of "deterring interference with *future* communication of information." *Commonwealth* v. *Burt*, 40 Mass. App. Ct. at 278, quoting from *United States* v. *San Martin*, 515 F.2d 317, 320 (5th Cir. 1975). A criminal investigation need not have commenced. See *Commonwealth* v. *Belle Isle*, 44 Mass. App. Ct. 226, 229 (1998). Nor must the victim be furnishing information on the day that the intimidating action is taken or statement made. *Commonwealth* v. *Burt, supra.* It is enough that the jury reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication. See *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 800-801.

We are not persuaded by the defendant's application of *Commonwealth* v. *Belle Isle, supra.* There, the defendant was convicted under G. L. c. 268, § 13B, and his conviction was affirmed, after he attacked his brother-in-law in the presence of other family members. The victim's wife announced that she was going to call the police, whereupon the defendant cut the telephone wire. That evidence supported a finding that the defendant forcibly and intentionally interfered with an attempt to provide information to a criminal investigator. *Id.* at 230. The decision was not intended to suggest that an attempt to communicate to authorities must be underway in order for there to be a violation of G. L. c. 268, § 13B, a proposition that we rejected in *Commonwealth* v. *Burt*, 40 Mass. App. Ct. at 277-278. Here, the jury could rationally find that the victim, once

assured that the defendant had left, would report the robbery, thus qualifying under the statute as a "person 'furnishing information' to a criminal investigator" (a purpose of statute is to deter interference with future communication of information). *Ibid.*

What we have said disposes as well of the defendant's contention that the judge erred in his instructions. The defendant charges his trial counsel with ineffective assistance for failure to object to an instruction that defined a victim for purposes of the witness intimidation statute as one "who *was to be* a person furnishing information to a criminal investigator about a criminal offense" (emphasis supplied). He challenges also the judge's instruction that the defendant acted "with the specific intent of influencing, impeding, obstructing, delaying or otherwise interfering with that person *as a potential witness*" (emphasis supplied). He argues, as before, that a conviction under G. L. c. 268, § 13B, cannot be predicated upon a possibility that a victim will provide information in the future. As we stated above, the statute does not require that a victim actually be in the process of furnishing information. See *Commonwealth* v. *Burt*, 40 Mass. App. Ct. at 278 (enough that evidence indicated that the witness's furnishing of additional information would be "forthcoming"). It follows that there was no error and consequently no ineffective assistance of counsel for failure to object.

*Judgments affirmed.*