After a jury trial, the defendant was convicted on an indictment charging intimidation of a witness and two indictments charging assault and battery.[2] On appeal, he claims that (1) the judge abused her discretion by admitting evidence of the defendant's prior bad acts, (2) the prosecutor's closing argument was improper, and (3) a specific unanimity instruction was required for the intimidation of a witness charge. We affirm.
1. Prior bad acts. The defendant claims the judge abused her discretion by admitting prior bad act evidence which was "more extensive" than the evidence supporting the indictments, the judge made no effort to limit the prejudice from this evidence, and the judge's limiting instructions were insufficient to "ameliorate that prejudice." We disagree.
Prior to the first trial, a hearing was held on the Commonwealth's motion in limine to admit the defendant's prior bad acts. At that hearing, the first judge weighed the probative value of the evidence against the possible prejudice, and he excluded several of the prior bad acts. At the second trial,[3] the judge reviewed the transcript of the first trial, adopted the first judge's rulings, allowed six prior bad acts to be admitted,[4] and excluded four others.[5] Contrary to the defendant's claim,[6] the judge properly admitted the prior bad acts to demonstrate the hostile nature of the relationship between the defendant and the victim. See Commonwealth v. Butler, 445 Mass. 568, 573-575 (2005) ; Commonwealth v. Oliveira, 74 Mass. App. Ct. 49, 54 (2009).
The defendant also claims the judge permitted the Commonwealth to elicit too many details of the prior bad acts. In support, the defendant relies on Commonwealth v. Dwyer, 448 Mass. 122, 124-125 (2006), but that reliance is misplaced. In Dwyer, the direct examination of the victim on the uncharged conduct was forty per cent longer than on the charged conduct, and most of the cross-examination and "much" of the defendant's testimony was directed to the uncharged conduct. Id. at 128. As a result, the Supreme Judicial Court held that the judge should have limited the prior bad act testimony to establishing, in summary fashion, that the complainant claimed abuse over a number of years. Id. at 129-130.
Here, in contrast, the judge avoided replicating the error in Dwyer. The bulk of the victim's testimony, relative to the charged conduct, i.e., describing the three-day time period where the defendant allegedly raped, beat, and controlled the victim, comprised two to three times the amount of testimony the victim gave relative to the uncharged conduct. Moreover, contemporaneous to the admission of several of the prior bad acts, the judge gave the jury cautionary instructions on the limited purpose of the evidence, explained that her instruction applied each time the jury heard evidence of the prior incidents, and repeated the limiting instruction in her final charge. See Commonwealth v. Gonzalez, 469 Mass. 410, 421 (2014). There was no abuse of discretion.
2. Closing argument. The defendant claims a variety of errors in the prosecutor's closing argument, but only two such claims were accompanied by an objection. We conclude there were neither prejudicial errors, nor an argument that created a substantial risk of a miscarriage of justice.
The defendant claims error in the prosecutor arguing, "When you're drawing from your common sense and your life experiences, ask yourselves, when was the last time someone came up to you and asked you details about your sexual experiences?" This remark generated an objection. However, contrary to the defendant's claim, this was not a request for the jury to believe the victim merely because she testified. Rather, in the context of the defendant's argument that the victim's testimony was motivated by her desire to receive free public housing, the prosecutor countered that common sense would dictate that the victim would not expose details of her private life to gain housing. To the extent the argument could have been understood for an improper purpose, the judge gave an immediate curative instruction that it was improper for lawyers to ask jurors to put themselves in the place of the defendant or the victim. The defendant expressed no dissatisfaction with this remedy, and any prejudice had been cured. See Commonwealth v. Duncan, 71 Mass. App. Ct. 150, 158 (2008).
The defendant next claims that portions of the prosecutor's argument were not supported by the evidence. In particular, he finds fault in the prosecutor's argument that the victim's friend made a telephone call[7] that "saved [the victim's] life."[8] The defendant maintains that there was no evidence that he intended to kill the victim or that her life was in any immediate danger. We disagree.
The evidence painted a picture of the victim being in grave danger. The defendant forced his way into the victim's home wearing a ski mask, controlled her for next three days, and told her they should poison their food and kill themselves or steal a van and crash it into a tree. The defendant devised this plan to prevent their apprehension and separation. When asked whether the defendant spoke of "killing," the victim responded that she told the defendant to "[j]ust do it already." Based on the victim's testimony, coupled with the hostile nature of their relationship, the argument was based on the evidence, or at the very least, a reasonable inference therefrom. There was no error.
The defendant also claims for the first time on appeal that the evidence did not support the prosecutor's argument that the defendant "watched her from the living room window, devised a plan for punishment when he determined, ... that she disobeyed." We disagree.
There was evidence that the victim requested the defendant's permission to go to the park across the street from her house. The defendant warned her to "[s]tay where [he] could see her," and he watched her through an open window while she was sat on a bench with her friend. The victim and her friend texted each other while sitting on the same bench, rather than speaking. Before returning to the house, the victim deleted the texts to prevent the defendant from discovering their conversation. From this evidence, and again from the hostile nature of their relationship, it was a fair inference that the defendant, from his surveillance point, was maintaining his control over the victim, but was also formulating possible punishment she would receive if she disobeyed. There was no error.
On the same theme, also for the first time on appeal, the defendant further claims there was no evidence to support the prosecutor's argument that the photographic exhibit of the bruises on the victim's chin "was evidence of oral rape." We disagree. The victim specifically testified that the defendant "forced [her] face into his genitals." She also identified the photograph of the bruises on her chin and told the jury she got that bruise on Mother's Day. The claim is without merit.[9]
Finally, the defendant claims for the first time on appeal that the prosecutor improperly argued that the prior bad acts evidence demonstrated the defendant's intent, "his state of mind and his motive towards [the victim] in this case," and "[i]t shows his pattern of conduct, a circle of abuse." While the judge did limit the use of the prior bad act evidence to demonstrate the hostile nature of the relationship, the prosecutor did not use the evidence in a manner prohibited by our case law. In other words, the prosecutor did not argue that the defendant's prior pattern of conduct meant that he was now guilty of the crimes as charged, i.e., propensity.[10]
Given the lack of objection, it remains doubtful that the jury attached an improper meaning to the evidence as it was offered or argued. See Oliveira, 74 Mass. App. Ct. at 56 ("the lack of an objection by defense counsel is further indication that the remark[s were] not unfairly prejudicial in tone, manner, or substance"). Even if we were to assume this portion of the argument was improper, in light of the judge's repeated instructions to the jury that the evidence could not be used for a propensity purpose, her instructions that closing arguments are not substitutes for evidence, and the lack of any objection to the judge's instructions, the defendant has failed to establish that the prosecutor's remark created a substantial risk of a miscarriage of justice. See Commonwealth v. Lodge, 431 Mass. 461, 471 (2000) (no error when argument reviewed in its entirety).
3. Specific unanimity. Finally, and also for first time on appeal, the defendant claims the judge erred in not instructing the jury sua sponte on specific unanimity relative to the intimidation of a witness indictment. Specifically, the defendant alleges there was insufficient evidence to support two of the five instances of intimidation of a witness, and therefore, the judge should have instructed the jury on specific unanimity. We disagree.
A specific unanimity instruction is called for "when, on a single charged offense, the prosecutor presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged." Commonwealth v. Santos, 440 Mass. 281, 284-285 (2003). When such an instruction is neither requested nor given, there exists no risk of a miscarriage of justice as long as all of the discrete incidents sufficiently make out the crime. See Commonwealth v. Grandison, 433 Mass. 135, 147 (2001) ; Commonwealth v. Plunkett, 422 Mass. 634, 638-639 & n.2 (1996).
"In order to prove the defendant guilty of intimidation of a witness in violation of G. L. c. 268, § 13B, the Commonwealth was required to show that the defendant, either directly or indirectly, made a wilful effort to intimidate or harass another person who was a witness or potential witness at any stage of a criminal investigation or proceeding." Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 845 (2016). See Hrycenko v. Commonwealth, 459 Mass. 503, 507 (2011).
The defendant claims that two of the five letters did not support his conviction of witness intimidation. The first letter at issue, letter two, was sent not to the victim, but to her mother instead. The defendant maintains this letter did not establish witness intimidation given the absence of evidence that the defendant intended the content of the letter to be communicated to the victim.[11] We disagree.
In fact, in the letter itself, the defendant directly asked the victim's mother to communicate to the victim the contents of the letter. He wrote "[t]ell her I love her" and that he is "retired from the streets, Ma ... Tell Her that!" The defendant further expressed his intent for the victim's mother to communicate the defendant's threat where he wrote, "Why won't you say something to her? ? ? Ma? ? ? How can you just let her make all of these bad choices and why would you want her with anyone else, Ma? ? ? WTF? ? ? TALK to Her!!!" Because a witness may be intimidated indirectly, and a threat need not actually reach an intended target, Commonwealth v. Valentin V., 83 Mass. App. Ct. 202, 206 (2013), there is no merit to the defendant's claim.[12]
The next letter at issue, letter three, was sent directly to the victim. Relative to this letter, the defendant claims that it contained nothing that could reasonably be seen as threatening or intimidating. We disagree.
The third letter begins with the defendant asking the victim "how could you take me away from my kids like that? ? ?" "Don't let nobody threaten you or threaten to take our kids away or put you & the kids [on] the streets." He later writes, "I will use every strength in my mind, body& soul to gain 'custody' or even 'visitation' rights to see my kids. So either bring them up here to see me, or I will bring you to court for custody and visitation rights. Don't be stupid. Make your decision?!?" After expressing his disbelief in the validity of the case against him, the defendant further warned, "Don't play games with me. You know I'm not for that. Just come through for me and show me [that] love is pure!!! Fuck all these haters. Show me we made it together, forever!!!" (Emphases in original.)
In the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979), these statements were not, as the defendant suggests, merely a father exercising his fundamental right to parent his children. Rather than merely expressing the defendant's desire to parent his children, the letter could easily be understood by a rational jury to have been a threat directed at the victim and her being a witness against the defendant at a trial on the pending charges. He threatens legal action against the victim, mentions the charges against him, and threatens the victim to not be "stupid" and to not "play games" with him because she knows what will happen if she does. See Commonwealth v. Cohen No.1, 456 Mass. 94, 124 (2010) ("an action does not need to be overtly threatening to fall within the meaning of intimidation" [quotations omitted] ).
In the light most favorable to the Commonwealth, and drawing all reasonable and possible inferences in favor of the verdict, the jury were permitted to conclude the defendant's letter was a wilful effort to intimidate, threaten, or harass the victim, who was a potential witness, in a criminal investigation or proceeding. Also, the jury would have been permitted to conclude that it was the defendant's purpose to influence the victim as a witness. See Commonwealth v. King, 69 Mass. App. Ct. 113, 120 (2007) ("A fact finder may evaluate the circumstances in which the statement was made ... to determine whether the defendant in fact intended to intimidate the victim"). Finally, the fact that the defendant sent the letters from jail only bolsters the conclusion that he endeavored to intimidate the victim. Compare Commonwealth v. O'Neil, 67 Mass. App. Ct. 284, 285-286, 294 (2006). The absence of a unanimity instruction did not create an error let alone a substantial risk of a miscarriage of justice.[13]
Judgments affirmed.

The defendant was acquitted of rape.

The first trial resulted in a mistrial.

Using the original numbering, the following prior bad acts were admitted: (3) in February, 2010, the defendant verbally and physically abused the victim giving her a black eye and a broken nose ; (4) in November, 2009, the defendant raped and impregnated the victim with their second child; (5) in May, 2011, while the victim was pregnant, the defendant was verbally and physically abusive toward the victim, including throwing her into an icy shower, beating her with a belt, locking her out of the house while she was naked, and telling her to kill herself; (7) on December 1, 2011, the defendant brought two women to the apartment and when the victim made a "funny face" while she held her baby daughter, the defendant punched her in the face and broke her jaw; (8) the defendant told the victim he had joined a gang, the Latin Kings, and that if she did not obey him, he or someone else would hurt her; and (9) in 2006, the defendant forced the victim to sign a contract that she would be with him forever.

The judge excluded the following prior bad acts: (1) in September, 2009, the defendant physically and verbally abused the victim and forced anal sex as punishment when she disobeyed him; (2) in October, 2009, the defendant physically and verbally abused the victim and left bruises on her arms and legs; (6) the defendant would not let the victim have the keys to her car, forced her to live in deplorable conditions, and repeatedly brought women to the house for the purposes of his pornography business; and (8) the defendant joined the Latin Kings while he was incarcerated, evidence which caused the mistrial at the first trial.

At the pretrial hearing defense counsel agreed that prior bad (7) was admissible.

The victim's friend called an administrator of a social service program at South Shore Housing. The administrator then called the police who responded to the victim's home.

The defendant claims this argument was preserved for appeal with an objection, and the Commonwealth agrees. We are not as sanguine. While the defendant did object, he did so only after the judge completed her final instructions to the jury. This objection was too late. See Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 692-693 (2015) ("We have a contemporaneous objection rule, not a retroactive objection rule"). In any event, the result we reach is the same regardless of the standard of review we employ.

The defendant also claims there was no evidence to support the prosecutor's argument that the defendant "tried to silence her. He covered her mouth. Threatened police presence, knife in one hand, ski mask on his face, shades pulled down." This claim is incorrect because the record supports each of these assertions of fact. It was also a fair inference for the prosecutor to argue that the victim was relieved when the police arrived given that the defendant had the victim under his control for three days, and that when the police arrived, the victim was crying and sobbing. Also, there was no improper appeal to sympathy in the prosecutor's record-based mention of the derogatory names the defendant used for the victim. The Commonwealth was entitled to paint a full picture of the hostile nature of their relationship.

Indeed, evidence of prior bad acts may be admitted, for example, to show a common plan, pattern of conduct, intent, or motive, see Commonwealth v. Helfant, 398 Mass. 214, 224-225 (1986) ; Commonwealth v. King, 387 Mass. 464, 472 (1982) ; Mass. G. Evid. § 404(b) (2018); to show a modus operandi, see Commonwealth v. Chartier, 43 Mass. App. Ct. 758, 760-761 (1997) ; or to counter a defendant's denial, see Commonwealth v. Maimoni, 41 Mass. 321, 327 (1996).

The defendant does not challenge the threatening content of this letter.

Relying on Valentin V., supra, the defendant also claims that the judge was required, and failed, to instruct that a defendant can be convicted of witness intimidation based on a threatening comment made to an intermediary only if he intended the intermediary to pass along the threat to the intended target. Putting aside that the defendant did not request such an instruction, Valentin V. does not mandate that such an instruction be given. Rather, in that case we held that intimidation may be carried out indirectly upon proof that the defendant intended the threat to be communicated to the victim. Id. 205-206. Here, the judge's instruction on intimidation of a witness properly conveyed the necessary intent to commit the crime, and how it may be accomplished indirectly. There was no error, and thus, no risk that justice miscarried.

To the extent that we do not address the defendant's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).