NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-849

COMMONWEALTH

vs.

ISAIAH GRAHAM.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Isaiah Graham, appeals from his convictions on indictments charging assault and battery on a household member, assault and battery, and witness intimidation.  We affirm.

Background.  The victim and the defendant had been dating for approximately two years and were engaged at the time of the incident.  The victim lived in an apartment with her daughters and grandchildren, and the defendant often stayed overnight.

On October 20, 2021, the night before the victim's birthday, the defendant went to her apartment around 10 to 11 P.M.  He mistakenly believed that the victim was cheating on him, yelled at her, took her phone, and left the apartment.

When the defendant returned "a couple of hours" later, he went into the victim's bedroom and confronted her. At 1 A.M., the victim's daughter overheard arguing and asked them to quiet down. By 4:30 A.M., the arguing continued, and the victim's daughter returned to the bedroom and separated them. She told the defendant to leave, and he stated that he first needed to charge his phone. While charging his phone in the living room, the defendant told the victim's daughter, "I'm in love with you; not your Mother." The victim's daughter left to go check on her children.

The argument between the defendant and the victim continued in the bedroom and became violent. He was "hitting" her and saying "a lot of bad things," which included that "he never loved [her], he loved [her eldest] daughter," and that "he was going to call someone over and have sex with them in front of [her]." The victim attempted to leave her bedroom "too many" times during the altercation, but each time the defendant "would push [her], or he would grab [her], and throw [her] on the bed" leaving her bruised. He punched her in the mouth, causing a fat lip and breaking a tooth, and punched her on the side of the head, causing bruising to her face. He threatened, "if [she] told on him, he was going to have [her] killed" and that "his boys" would kill her. Once the victim's daughter overheard the victim say, "he's beating me, he's beating me," she returned to

2

the victim's bedroom and removed the defendant. The victim called 911, and around 8:00 A.M. responding police officers found the victim shaking and injured.

Discussion. 1. Sufficiency of the evidence, witness intimidation. Witness intimidation under G. L. c. 268, § 13B, consists of the following: "(1) a possible criminal violation occurred that would trigger a criminal investigation or proceeding; (2) the victim would likely be a witness or potential witness in that investigation or proceeding; (3) the defendant engaged in intimidating behavior, as defined in the statute, toward the victim; and (4) the defendant did so with the intent to impede or interfere with the investigation or proceeding." Commonwealth v. Fragata, 480 Mass. 121, 122 (2018). The defendant challenges the sufficiency of the evidence only as to the first and fourth elements. We conclude that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

We disagree with the defendant's contention that evidence of intimidating behavior (warning not to tell on him or be killed) was insufficient because it was divorced from a possible crime, and he lacked any intent to impede or interfere with an

3

investigation.  The defendant emphasizes the absence of any evidence establishing the exact timing of the defendant's statement in relation to the beatings.  Although the victim never pinpointed the defendant's statement on a timeline of the altercation, jurors could readily infer that the statement referenced contemporaneous beatings in the bedroom:  "if [she] told on him, he was going to have [her] killed" and that "his boys" would kill her.  Jurors could also readily infer that the purpose of the defendant's statement was to prevent the victim from contacting the police after she sustained significant, visible injuries.  See Commonwealth v. King, 69 Mass. App. Ct. 113, 120 (2007) (statute "does not require that a defendant specifically articulate a threat not to speak to the police or other criminal investigator").  "It is enough that the jury reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication." Id. at 121.  Contrast Fragata, 480 Mass. at 123 (intimidating behavior unrelated to crime and related only to screaming at victim and calling her names).

We note that the Latimore standard requires inferences to be drawn in the Commonwealth's favor instead of entertaining alternative inferences.  Latimore, 378 Mass. at 676-677.  For

4

example, the defendant suggests the demand for the victim's silence referred merely to his "embarrassing behavior" rather than criminal conduct -- mistakenly thinking the victim was cheating, declaring his love for the victim's daughter, and saying he wanted to have sex with another woman in front of the victim.  Under the Latimore standard, however, "we do not weigh the supporting evidence against conflicting evidence." Commonwealth v. Semedo, 456 Mass. 1, 8 (2010).  "That contradictory evidence exists is not a sufficient basis for granting a motion for a required finding of not guilty." Commonwealth v. Merry, 453 Mass. 653, 662 (2009).  Moreover, jurors could reasonably infer that the defendant would not have threatened to kill the victim to deter her from disclosing conduct that was simply embarrassing rather than criminal.

2.  Specific unanimity instruction.  A specific unanimity instruction "is required only if there are separate events or episodes and the jurors could otherwise disagree concerning which act a defendant committed and yet convict him of the crime charged."  Commonwealth v. Thatch, 39 Mass. App. Ct. 904, 904 (1995).  Such an instruction is not warranted "where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents."  Commonwealth v. Pimental, 54 Mass. App. Ct. 325, 329 (2002).  In other words, where a defendant's conduct amounts to a single episode "where the spatial and

5

temporal separations between acts are short," a specific unanimity instruction is not necessary.  Commonwealth v. Shea, 467 Mass. 788, 798 (2014), quoting Commonwealth v. Santos, 440 Mass. 281, 285 (2003).  No such instruction was provided or required here.

For the first time on appeal, the defendant argues that because there was evidence of various incidents (including a prior incident on October 14), any of which could have constituted a potential criminal violation witnessed by the victim, there was a risk that the jury returned a guilty verdict on the single charge of witness intimidation without reaching a unanimous consensus as to which facts supported that charge.  As the defendant did not request a specific unanimity instruction, or object when the judge did not give such an instruction at trial, we review for a substantial risk of a miscarriage of justice.  See Commonwealth v. Casbohm, 94 Mass. App. Ct. 613, 620 (2018).  That issue turns on whether we have "a serious doubt whether the result of the trial might have been different had the [claimed] error not been made."  Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

A specific unanimity instruction was not warranted here because the evidence did not include discrete incidents susceptible to confusion among jurors.  See Santos, 440 Mass. at 284-285.  Indeed, the indictment for witness intimidation

limited the conduct at issue to "the [twenty-first] day of October," as opposed to the conduct that occurred on October 14. In his final instructions, the judge told jurors that "there's a verdict slip for [witness intimidation] on October 21."

The defendant's argument that some members of the jury might have viewed the conduct on October 14 as the potential criminal violation causes us no such "serious doubt." LeFave, 430 Mass. at 174. The victim testified that she had forgiven the defendant for that incident -- an alleged assault and battery -- because he had said he was sorry, she believed him, and their relationship did not end at that time. Indeed, the jury found the defendant not guilty of the charge arising from that conduct. Jurors are unlikely to have nevertheless believed that, one week later, the defendant threatened to kill the victim if she told anyone about the incident, which to her was already water under the bridge.

As to the potential criminal violations occurring on October 21, the victim's testimony indicated a continuing course of conduct rather than discrete incidents. The victim testified that the altercation occurred in her bedroom and spanned eight to nine hours; she and the defendant argued "the entire time"; she attempted to leave the room "a lot" of times, which resulted in the defendant assaulting her; and neither she nor the defendant slept. This entire episode occurred during a limited

7

window of time within the confines of the victim's bedroom. Contrast Commonwealth v. Conefrey, 420 Mass. 508, 511-514 (1995) (error to refuse specific unanimity instruction where defendant charged with sexually abusing same victim "at divers times and dates" over course of year). Accordingly, the absence of such an instruction did not give rise to an error, let alone a substantial risk of a miscarriage of justice.

3. Evidence of 911 call. During the forty-seven second 911 call (often unintelligible) that was admitted into evidence as an excited utterance, the victim reported that the defendant tried to kill her and went downstairs where he "tried to hit" her daughter. The defendant claims that these statements were unfairly prejudicial and constituted inadmissible evidence of uncharged "bad act" conduct. Because the defendant objected to the admission of the 911 call at trial on different grounds than those raised on appeal, we review for an error creating a substantial risk of a miscarriage of justice. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 n.6 (2019).

Rather than constituting bad act evidence, the victim's spontaneous declaration "tended to characterize and explain her perception of her encounter with the defendant" and was admissible "as proof of the exciting event." Commonwealth v. Nunes, 430 Mass. 1, 4 (1999). Additionally, the circumstances surrounding her declaration tended to reveal her state of mind

8

and bore on her credibility. "Evidence of a victim's state of mind or behavior following a crime has long been admissible if relevant to a contested issue in a case." Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 800-801 (2011), quoting Commonwealth v. Arana, 453 Mass. 214, 225 (2009). Evidence of the 911 call, made in the immediate aftermath of the events, "played an integral role in assessing credibility." Starkweather, supra at 801. "The weighing of the prejudicial effect and probative value of evidence is within the sound discretion of the trial judge, the exercise of which we will not overturn unless we find palpable error." Commonwealth v. Bonds, 445 Mass. 821, 831 (2006). We discern no such error here.

Also, contrary to the defendant's contention, "[r]elevant evidence is not rendered inadmissible by its potential to arouse feelings of sympathy in a jury. The evidence remains admissible if its probative value outweighs its potential for sympathy." Commonwealth v. Mendes, 441 Mass. 459, 467 (2004). That determination is a discretionary one for the trial judge, and we discern no abuse of discretion. See Commonwealth v. Tobin, 392 Mass. 604, 613 (1984). Furthermore, the judge instructed jurors not to be swayed by sympathy, and jurors acquitted the defendant on two indictments. See Commonwealth v. Bly, 444 Mass. 640, 654-655 (2005).

4. <u>Penalty</u>. "Due process requires that criminal statutes unambiguously describe proscribed conduct and the penalties resulting from engaging in such conduct." <u>Commonwealth</u> v. <u>Dowler</u>, 414 Mass. 212, 216 n.7 (1993). The defendant claims that the witness intimidation statute, G. L. c. 268, § 13B, fails to provide a penalty for the conduct with which he was charged. "Because the defendant did not preserve this issue at trial, we consider only whether it creates a substantial risk of a miscarriage of justice." <u>Commonwealth</u> v. <u>Gupta</u>, 84 Mass. App. Ct. 682, 686 (2014).

"Statutory interpretation is a pure question of law." <u>Commonwealth</u> v. <u>Cintolo</u>, 415 Mass. 358, 359 (1993). "Courts generally interpret criminal statutes in a manner that is consistent with ordinary English usage." <u>Commonwealth</u> v. <u>Cassidy</u>, 479 Mass. 527, 534, cert. denied, 586 U.S. 876 (2018). A defendant is given the benefit of an ambiguous statute, but this rule "does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one." <u>Commonwealth</u> v. <u>Wotan</u>, 422 Mass. 740, 742-743 (1996), quoting <u>Commonwealth</u> v. <u>Roucoulet</u>, 413 Mass. 647, 652 (1992).

There is no ambiguity in the plain language of the statute. Written as a lengthy sentence, subsection (<u>b</u>) of the statute sets forth elements of three alternative forms of conduct

10

(subsections [i]-[iii]), directed at one of five categories of protected individuals (subsections [A]-[E]), with two alternative forms of intent (subsections [1]-[2]).  The alternative forms of intent are the last elements listed in the series and are followed by the penalty clause:  "with the intent to . . . (1) impede, obstruct, delay, . . . or (2) punish, harm or otherwise retaliate . . . shall be punished by imprisonment" for specified periods.  G. L. c. 268, § 13B (b).  Following the "basic principle of statutory construction that a statute must be read as a whole," Commonwealth v. Adams, 389 Mass. 265, 273 (1983), we conclude that the penalty clause applies to the entire series of elements, not just the intent to punish, harm or otherwise retaliate that immediately precedes the penalty clause.  For the same reason, we conclude that the statute is "sufficiently clear to give notice of the prohibited conduct." Commonwealth v. Reyes, 464 Mass. 245, 248 (2013).  Thus, we

discern no error and no substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Meade, Sacks & Hodgens, JJ.[1]),

*Paul Little*

Clerk.

Entered:  June 4, 2025.

---

[1] The panelists are listed in order of seniority.